UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 15-00704(A)-SJO |
| Plaintiff, | **F I R S T** |
| v. | **S U P E R S E D I N G** <br> **I N D I C T M E N T** |
| RAMI NAJM ASAD-GHANEM, <br> aka "Rami Ghanem," | [18 U.S.C. § 371: Conspiracy; <br> 22 U.S.C. §§ 2778(b)(1)(A)(ii), <br> (c), and 22 C.F.R. §§ 126.1, <br> 127.1(b)(2): Arms Export <br> Control Act; 18 U.S.C. § 2332g: <br> Missile Systems Designed to <br> Destroy Aircraft] |
| Defendant. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

A.   DEFENDANT

1.   Defendant RAMI NAJM ASAD-GHANEM, also known as ("aka") "Rami Ghanem" ("defendant GHANEM"), was a citizen of the United States.

B.    THE STATUTES AND REGULATIONS

2.    The Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"), as amended, authorized the President of the United States to control the import and export of "defense articles" and "defense services."

3.    The AECA also gave the President the authority to designate articles and services deemed to be defense articles and services subject to export control.  That statutory authority was delegated to the U.S. Secretary of State.  By virtue of delegations of authority by the Secretary of State, the implementing regulations, the International Traffic in Arms Regulations, 22 C.F.R. §§ 120-130 (the "ITAR"), were administered by the Deputy Assistant Secretary of State for Defense Trade Controls, Bureau of Political-Military Affairs. The Deputy Assistant Secretary of State for Defense Trade Controls supervised the Directorate of Defense Trade Controls ("DDTC"), which had responsibilities relating to licensing, other approvals of defense trade, and violations of law or regulation and compliance.

4.    The ITAR contained a list of defense articles and defense services subject to control by these regulations.  This list was called the United States Munitions List ("USML"), Title 22, Code of Federal Regulations, Section 121.1.  Designations of defense articles and defense services to the USML were made by the United States Department of State ("Department of State")

with the concurrence of the United States Department of Defense ("Department of Defense").  (22 U.S.C. § 2778(a)(1); 22 C.F.R. § 120.2.)

C.  DEFINITIONS

5.   "Defense article" meant any item or technical data designated on the USML.  (22 C.F.R. § 120.6.)

6.   "Defense service" meant:

a.   The furnishing of assistance, including training, to foreign persons, whether in the United States or abroad, in the design, development, engineering, manufacture, production, assembly, testing, repair, maintenance, modification, operation, demilitarization, destruction, processing, and use of defense articles;

b.   The furnishing to foreign persons of any technical data controlled by the ITAR; and

c.   Military training of foreign units and forces, regular and irregular, including formal or informal instruction of foreign persons by correspondence courses, technical, educational, or information publications and media of all kinds, training aid, orientation, training exercise, and military advice.  (22 C.F.R. § 120.9.)

7.   The terms "defense article" and "defense service" referred to both U.S-origin and foreign-origin defense articles and defense services described on the USML.  (22 C.F.R. § 120.44.)

3

8.   "Foreign defense article" meant any article described on the USML of non-U.S. origin.  (22 C.F.R. § 120.44.)

9.   "Foreign defense service" meant any service described on the USML of non-U.S. origin.  (22 C.F.R. § 120.44.)

10.  "Brokering activities" meant any action on behalf of another to facilitate the manufacture, export, permanent import, transfer, re-export, re-transfer, or furnishing of a U.S. or foreign defense article or U.S. or foreign defense service, regardless of its origin.  (22 C.F.R. § 129.2.)

11.  A "broker" meant any person (including a natural person, corporation, business association, partnership, society, trust, or any other entity, organization, or group) engaged in the business of brokering activities and who was: a) a U.S. person, wherever located; b) a foreign person located in the United States; or c) a foreign person located outside the United States where the foreign person is owned or controlled by a U.S. person.  (22 C.F.R. § 129.2.)

12.  "U.S. person" meant a person (including natural persons, corporations, business associations, partnerships, and other entities) who was a citizen, national, or lawful permanent resident of the United States.  (22 C.F.R. § 120.15.)

D.   RELEVANT USML CATEGORIES

13.  Category I of the USML included firearms, close assault weapons, and combat shotguns.  (22 C.F.R. § 121.1.)

14.    Category II of the USML included guns and armaments. (22 C.F.R. § 121.1.)

15.    Category III of the USML included ammunition/ordnance. (22 C.F.R. § 121.1.)  Subsection (a) of Category III of the USML included ammunition/ordnance for the articles in Categories I and II of the USML.  (22 C.F.R. § 121.1.)

16.    Category IV of the USML included launch vehicles, guided missiles, ballistic missiles, rockets, torpedoes, bombs, and mines.  (22 C.F.R. § 121.1.)

17.    Category VII of the USML included ground vehicles and certain parts therefor.  (22 C.F.R. § 121.1.)

18.    Category VIII of the USML included aircraft and related articles and certain parts therefor.  (22 C.F.R. § 121.1.)

19.    Category IX of the USML included military training equipment and training.  Subcategory (e) of Category IX of the USML included defense services. (22 C.F.R. § 121.1.)

20.    Category XII of the USML included fire control, range finder, optical and guidance control equipment, such as image intensification tubes, and included certain components, parts, accessories, attachments, and associated equipment related to the same.  (22 C.F.R. § 121.1.)

21.    The following defense articles and defense services, among others, were designated on the USML:

| Commodity | Controls |
|---|---|
| 12.7-millimeter NSVT machine guns | USML I |
| 7.62-millimeter AKS assault rifles | USML I |
| 7.62-millimeter AKM assault rifles | USML I |
| 7.62-millimeter PKM medium machine guns | USML I |
| 7.62-millimeter SVD sniper rifles | USML I |
| Sniper rifles | USML I |
| CZ-999 pistols 9-millimeter pistols | USML I |
| Glock 9-millimeter pistols | USML I |
| AK-47 assault rifles | USML I |
| Dragonov sniper rifles | USML I |
| 14.5-millimeter KPVT machine guns | USML II |
| 60-millimeter mortar shells | USML III |
| 81-millimeter mortar shells | USML III |
| 120-millimeter mortar shells | USML III |
| 7.62 x 39-millimeter ammunition | USML III |
| Ammunition | USML III |
| 23-millimeter ammunition | USML III |
| Zsu-23-2 23-millimeter ammunition | USML III |
| 5.56 x 45-millimeter ammunition | USML III |
| BS-41 14.5-millimeter ammunition | USML III |
| 9 x 19-millimeter ammunition | USML III |
| Zsu-57-2 57-millimeter anti-aircraft ammunition | USML III |
| M51 37-millimeter anti-aircraft armor-piercing capped trace | USML III |
| 7.62 x 39-millimeter ammunition | USML III |
| 7.62 x 54-millimeter ammunition | USML III |
| 7.62 x 54-millimeter BKC ammunition | USML III |
| 12.7 x 108-millimeter ammunition | USML III |
| Dishka 127 x 108-millimeter ammunition | USML III |
| 14.5 x 114-millimeter ammunition | USML III |
| 23 x 152-millimeter ammunition | USML III |
| D20 152-millimeter tank rounds | USML III |
| M48 76-millimeter tank rounds | USML III |
| D30 122-millimeter towed howitzer heat tank rounds | USML III |
| 12.7 x 108-millimeter ammunition | USML III |
| RPG-7 anti-tank rocket-propelled grenade launcher | USML IV |
| Kornet anti-tank guided missile launchers | USML IV |

| Commodity | Controls |
|---|---|
| Kornet anti-tank guided missiles | USML IV |
| Igla 9K38 surface-to-air missile launchers | USML IV |
| Igla 9K38 surface-to-air missiles | USML IV |
| MI-24 rocket launchers | USML IV |
| 57-millimeter rockets | USML IV |
| 80-millimeter rockets | USML IV |
| 122-millimeter S-13T rockets | USML IV |
| 122-millimeter S-13 OF rockets | USML IV |
| 130-millimeter rockets | USML IV |
| 240-millimeter rockets | USML IV |
| GRAD 122-millimeter rockets | USML IV |
| 122-millimeter GRAD rocket launcher | USML IV |
| 107-millimeter GRAD rocket launcher | USML IV |
| RPG-7 HEAT rounds | USML IV |
| AT-2 Swatter guided missiles | USML IV |
| AT-6 Spiral missiles | USML IV |
| Konkurs anti-tank missile launchers | USML IV |
| Konkurs anti-tank missiles | USML IV |
| AGS-17 30-millimeter grenade launchers | USML IV |
| Anti-tank grenade launchers RPG-7 | USML IV |
| Anti-tank grenades PG-7V | USML IV |
| Fagot 9K111 anti-tank guided missile launchers | USML IV |
| Fagot 9M111 anti-tank guided missiles | USML IV |
| M70 Osa 90-millimeter anti-tank guided missile launchers | USML IV |
| M79 Osa 90-millimeter anti-tank guided missile launchers | USML IV |
| 9M133 Kornet (Konkurs) anti-tank guided missile launchers including tripods and thermal sights | USML IV |
| 9M133 Kornet (Konkurs) anti-tank guided missiles | USML IV |
| 85-millimeter RPG-7 anti-tank launcher including telescopic sight | USML IV |
| PG-7VL 85-millimeter HEAT projectiles | USML IV |
| SKIF anti-tank guided missile launchers | USML IV |
| SKIF anti-tank guided missiles | USML IV |
| Strela surface-to-air missile launchers | USML IV |
| Strela surface-to-air missiles | USML IV |

| Commodity | Controls |
|---|---|
| M79 Osa RBR 90-millimeter anti-tank guided rocket launchers | USML IV |
| M79 Osa RBR 90-millimeter anti-tank guided rockets | USML IV |
| M79 Osa RBR 90-millimeter anti-tank guided rocket tubes | USML IV |
| 9M151 Metis-M anti-tank guided missile launchers | USML IV |
| 9M131 Metis-M anti-tank guided missiles | USML IV |
| Metis-M tripod launchers | USML IV |
| Konkurs tripod launchers | USML IV |
| 9P163-1 Kornet tripod launchers | USML IV |
| PG-7VLT tandem-charge anti-tank warheads | USML IV |
| PG-7VR 85-millimeter HEAT tandem projectiles | USML IV |
| Shershen-D anti-tank guided missile launchers | USML IV |
| Shershen-D anti-tank guided missiles | USML IV |
| Spare parts for T-72 battle tanks | USML VII |
| Spare parts for BTR-80 amphibious armored personnel carriers | USML VII |
| MI-24 attack helicopters | USML VIII |
| MIG-29 fighter jets | USML VIII |
| Operators for Igla surface-to-air missile launchers | USML IX |
| Technicians for Igla surface-to-air missile launchers | USML IX |
| Trainers for Igla surface-to-air missile launchers | USML IX |
| Special forces fighters | USML IX |
| MI-24 attack helicopter pilots | USML IX |
| L39 attack aircraft pilots | USML IX |
| F-1 fighter jet pilots | USML IX |
| MIG-25 fighter pilots | USML IX |
| PVS-27 night-vision weapon sight | USML XII |
| MI-24 night-vision equipment | USML XII |
| Shershen-D thermal sights | USML XII |
| Shershen-D PN-S combat module guidance devices | USML XII |
| 1PBN86-VI Metis-M thermal sights | USML XII |
| Konkurs thermal sights | USML XII |
| 1PN79-1 Kornet thermal sights | USML XII |

E.   EXPORTING DEFENSE ARTICLES

22.   The AECA and the ITAR required a person to apply for and obtain an export license from the DDTC before exporting, transferring, re-exporting, or re-transferring from the United States defense articles by any means.   (22 U.S.C. § 2778(b)(2); 22 C.F.R. §§ 120.1, 120.17.)

23.   At no time did defendant GHANEM or any co-conspirator apply for, receive, or possess a license to export, transfer, re-export, or re-transfer the PVS-27 night-vision weapon sights described in the counts below.

24.   At no time did defendant GHANEM or any co-conspirator apply for, receive, or possess a license to export, transfer, re-export, or re-transfer the Glock pistols described in the counts below.

F.   BROKERING ACTIVITIES

25.   At no time did defendant GHANEM apply for, receive, or possess a license to engage in brokering activities with respect to the defense articles or defense services described herein and in the counts below.

G.   ARMS EMBARGO

26.   No sale or transfer and no proposal to sell or transfer any defense articles could be made to countries identified in Title 22, Code of Federal Regulations, Section 126.1, including Libya and Iran, or to any person acting on behalf thereof, whether in the United States or abroad, without

first obtaining a license or written approval from DDTC pursuant to Title 22, Code of Federal Regulations, Section 126.1(e).

27.   Pursuant to Title 22, Code of Federal Regulations, Section 126.1(c)(1), whenever the United Nations Security Council mandated an arms embargo, all transactions that were prohibited by the arms embargo and involved U.S. persons inside or outside of the United States, or any person in the United States, and defense articles or defense services described on the USML, irrespective of origin, were prohibited under the ITAR for the duration of the sanctions, unless the Department of State published a notice in the Federal Register specifying different measures.

28.   On May 24, 2011, the Department of State amended the ITAR to reflect the United Nations Security Council Libyan arms embargoes adopted in February and March 2011.

29.   Pursuant to Title 22, Code of Federal Regulations, Section 126.1(k), it was the policy of the United States to deny licenses or other approvals for exports or imports of defense articles and defense services destined for or originating in Libya, except that a license or other approval might be issued, on a case-by-case basis, for:

(a) Arms and related materiel intended solely for security or disarmament assistance to the Libyan government, notified to the Committee of the Security Council concerning

Libya in advance and in the absence of a negative decision by the Committee within five working days of such a notification;

(b) Non-lethal military equipment when intended solely for security or disarmament assistance to the Libyan government;

(c) The provision of any technical assistance or training when intended solely for security or disarmament assistance to the Libyan government;

(d) Small arms, light weapons, and related materiel temporarily exported to Libya for the sole use of United Nations personnel, representatives of the media, or humanitarian and development workers and associated personnel, notified to the Committee of the Security Council concerning Libya in advance and in the absence of a negative decision by the Committee within five working days of such a notification;

(e) Non-lethal military equipment intended solely for humanitarian or protective use, and related technical assistance or training; or

(f) Other sales or supply of arms and related materiel, or provision of assistance or personnel, as approved in advance by the Committee of the Security Council concerning Libya.

30. Defendant GHANEM's conduct charged in this Indictment was not within the parameters of or in compliance with the United Nations arms embargo, as codified in Section 126.1 of the ITAR.

31.   At no time did defendant GHANEM or any co-conspirator apply for, receive, or possess a license or other approval to sell or transfer the PVS-27 night-vision weapon sights described in the counts below.

32.   At no time did defendant GHANEM or any co-conspirator apply for, receive, or possess a license or approval to sell or transfer the Glock pistols described in the counts below.

33.   No sale, export, transfer, re-export or retransfer of, and no proposals to sell, export, transfer, re-export, or re-transfer, any defense articles or defense services involving any country referred to in Title 22, Code of Federal Regulations, Section 126.1(e), including Libya, Iran, and Iraq, could be carried out by any person without first obtaining a license or written approval from DDTC pursuant to Title 22, Code of Federal Regulations, Section 126.1(e).

34.   At no time did defendant GHANEM or any Unindicted Co-Conspirator identified herein apply for, receive, or possess a license or written approval to make proposals or presentations relating to the defense articles or defense services described herein.

H.   MISSILE SYSTEMS DESIGNED TO DESTROY AIRCRAFT

35.   It was unlawful for any national of the United States, or any person over whom jurisdiction exists under this subsection, to knowingly acquire, transfer directly or indirectly, receive, possess, import, export, or use: 1) an

explosive or incendiary rocket or missile that was guided by any system designed to enable the rocket or missile to seek or proceed toward energy radiated and reflected from an aircraft or toward an image reflecting an aircraft, and otherwise direct or guide the rocket or missile to an aircraft; 2) any device designed or intended to launch or guide a rocket or missile; and 3) any part or combination of parts designed or redesigned for use in assembling or fabricating a rocket, missile, or other device.  (18 U.S.C. § 2332g.)

    36.  The factual allegations in paragraphs 1 through 35 are incorporated in all counts of this Indictment by reference and are re-alleged as though fully set forth therein.

COUNT ONE

[18 U.S.C. § 371]

A.    OBJECTS OF THE CONSPIRACY

37.    Beginning on a date unknown to the Grand Jury, but no later than September 4, 2013, and continuing through on or about December 8, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAMI NAJM ASAD-GHANEM, also known as ("aka") "Rami Ghanem" ("defendant GHANEM"), together with Unindicted Co-Conspirator #1, Unindicted Co-Conspirator #2, Unindicted Co-Conspirator #3, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to knowingly and intentionally commit the following offenses against the United States:

a.    To engage in the business of brokering activities for which registration and a license or written approval is required without first registering or obtaining the required license or written approval from the Directorate of Defense Trade Controls, in violation of Title 22, United States Code, Section 2778(b)(1), and Title 22, Code of Federal Regulations, Section 127.1(b)(2).

b.    To export, transfer, re-export, or re-transfer from the United States to another country defense articles listed on the USML, including Glock pistols and PVS-27 night-vision weapon sights, without first obtaining from the United States Department of State a license or written authorization for such export, transfer, re-export, or re-transfer, in violation of Title 22, United States Code, Section 2778(b)(2),

1  (c), and Title 22, Code of Federal Regulations, Sections 123.1,
2  127.1(a)(1), and 127.3.

3      c.   To make proposals and presentations to sell,
4  export, transfer, re-export, and re-transfer defense articles
5  and defense services subject to the ITAR without first obtaining
6  a license or written approval from DDTC in violation of Title
7  22, Code of Federal Regulations, Sections 126.1(e)(1) and
8  127.1(b)(1).

9  B.   MANNER AND MEANS OF THE CONSPIRACY

10     38.  The objects of the conspiracy were to be accomplished
11 in substance as follows:

12     a.   Defendant GHANEM, Unindicted Co-Conspirator #1,
13 and Unindicted Co-Conspirator #2 would engage with prospective
14 suppliers and buyers of defense articles and defense services on
15 behalf of Gateway to MENA for Logistics Services ("Gateway to
16 MENA").

17     b.   Defendant GHANEM, Unindicted Co-Conspirator #1,
18 and Unindicted Co-Conspirator #2 would negotiate pricing,
19 quantities, specifications, and other terms of sale with
20 prospective suppliers and buyers for the defense articles and
21 defense services on behalf of Gateway to MENA.

22     c.   Defendant GHANEM, Unindicted Co-Conspirator #1,
23 and Unindicted Co-Conspirator #2 would add a profit margin to
24 their suppliers' prices before offering defense articles and
25 defense services for sale to their buyers on behalf of Gateway
26 to MENA.

27     d.   Defendant GHANEM, Unindicted Co-Conspirator #1,
28 and Unindicted Co-Conspirator #2 would arrange for prospective

buyers to obtain end-user certificates indicating the final customer for the defense articles and defense services.  On at least some occasions, defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2 knew that these end-user certificates were falsified.

      e.    Defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2 would cause payment to be made to suppliers of defense articles and defense services on the suppliers' invoices.  On at least some occasions, these invoices falsely reflected the purchase of other commodities, rather than the defense articles or defense services that defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2 actually purchased.

      f.    Unindicted Co-Conspirator #3, at times operating through Company A and at times operating through Company B, would supply defense articles and defense services to defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2 in exchange for payment.  On at least some occasions, Unindicted Co-Conspirator #3 would provide to defendant GHANEM, Unindicted Co-Conspirator #1, Unindicted Co-Conspirator #2, and Gateway to MENA cover invoices falsely reflecting the purchase of other commodities that were not defense articles or defense services, rather than the actual defense articles or defense services that defendant GHANEM, Unindicted Co-Conspirator #1, Unindicted Co-Conspirator #2, and Gateway to MENA purchased.

C. <u>OVERT ACTS</u>

39. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Central District of California and elsewhere:

<u>Overt Act No. 1:</u> On or about September 4, 2013, in an electronic message, defendant GHANEM discussed with an unindicted co-conspirator his efforts to procure, on behalf of a foreign government, an S-400 Triumph anti-aircraft missile defense system.

<u>Overt Act No. 2:</u> On or about September 9, 2013, defendant GHANEM sent to Unindicted Co-Conspirator #2 an electronic message containing a list of the following defense articles that defendant GHANEM sought to procure, in unspecified quantities, on behalf of a foreign government to be covertly supplied to Libya, Syria, and the Kurdish region of Iraq:

```
9 x 19-millimeter ammunition
5.56 x 45-millimeter ammunition
7.62 x 54-millimeter ammunition
7.62 x 39-millimeter ammunition
7.62 x 54-millimeter BKC ammunition
Zsu-57-2 57-millimeter anti-aircraft ammunition
M51 37-millimeter anti-aircraft armor-piercing capped
trace
Zsu-23-2 23-millimeter ammunition
BS-41 14.5-millimeter ammunition
Dishka 127 x 108-millimeter ammunition
D20 152-millimeter tank rounds
M48 76-millimeter tank rounds
D30 122-millimeter towed howitzer heat tank rounds
GRAD 122-millimeter rockets
122-millimeter GRAD rocket launcher
107-millimeter GRAD rocket launcher
RPG-7 HEAT rounds
CZ-999 pistols 9-millimeter pistols
Glock 9-millimeter pistols
AK-47 assault rifles
Dragonov sniper rifles
7.62-millimeter PKM medium machine guns
```

```
RPG-7 anti-tank rocket-propelled grenade launcher
Kornet anti-tank guided missile launchers
Kornet anti-tank guided missiles
Konkurs anti-tank missile launchers
Konkurs anti-tank missiles
Igla 9K38 surface-to-air missile launchers
Igla 9K38 surface-to-air missiles
```

Overt Act No. 3   On or about September 9, 2013, Unindicted Co-Conspirator #2 replied to defendant GHANEM's inquiry about the list of defense articles identified in Overt Act No. 2 to ask about the desired quantities and the intended destinations for those defense articles.

Overt Act No. 4:   On or about November 8, 2013, Unindicted Co-Conspirator #2 sent to defendant GHANEM an e-mail containing pricing information for the following defense articles that defendant GHANEM sought to purchase:

```
3,000,000 rounds of 12.7 x 108-millimeter ammunition
3,000,000 rounds of 14.5 x 114-millimeter ammunition
198 12.7-millimeter NSVT machine guns
50 14.5-millimeter KPVT machine guns
2,500,000 rounds of 23-millimeter OFZ ammunition
1,500,000 rounds of 23-millimeter BZT ammunition
3,000 S-13T 122-millimeter rockets
3,900 S-13 OF 122-millimeter rockets
```

Overt Act No. 5:   Beginning on or about December 5, 2013, defendant GHANEM engaged in discussions via electronic message with an unindicted co-conspirator regarding the terms under which defendant GHANEM sought to procure an S-400 Triumph anti-aircraft missile defense system on behalf of a foreign government, which had already approved the purchase.

Overt Act No. 6:   On or about December 24, 2013, Unindicted Co-Conspirator #1 registered Gateway to MENA with the Ministry of Industry and Trade of a foreign government for the purpose of

using Gateway to MENA to conduct exports and transfers of

defense articles and defense services.

Overt Act No. 7:   On or about March 11, 2014, defendant GHANEM

sent a letter to a prospective weapons supplier in the Czech

Republic requesting to purchase for Gateway to MENA, on behalf

of a foreign government, the following defense articles, with

quantities to be determined based on the prospective supplier's

available stock:

> RPG-7 anti-tank grenade launchers
> 107-millimeter rocket launchers
> BM21 122-millimeter rocket launchers
> BM21 122-millimeter rockets
> 81-millimeter mortars
> 82-millimeter mortars
> 60-millimeter mortars
> 120-millimeter mortars
> 7.62 x 51-millimeter ammunition
> 7.62 x 54-millimeter ammunition
> 23-millimeter anti-aircraft twin-barreled autocannon
> Any small arms

Overt Act No. 8:   On or about July 30, 2014, defendant GHANEM

sent a letter to a foreign government offering to sell the

following defense articles on behalf of Gateway to MENA from

Gateway to MENA's stock:

> 1000 Konkurs 9P135M1 anti-tank missile launchers
> 300 Konkurs 9M113 anti-tank missiles
> 95 Igla surface-to-air missile systems
> 6000 Konkurs 9M113 anti-tank missiles
> 120 Konkurs 9M113 anti-tank missile launchers
> 8 Strela surface-to-air missile launchers
> 400 Strela surface-to-air missiles
> 300 M79 Osa RBR 90-millimeter anti-tank guided rocket launchers
> 815 M79 Osa RBR 90-millimeter anti-tank guided rockets
> 815 M79 Osa RBR 90-millimeter anti-tank guided rocket tubes
> 50 9M151 Metis-M anti-tank guided missile launchers
> 250 9M131 Metis-M anti-tank guided missiles
> 50 Metis-M tripod launchers
> 50 1PBN86-VI Metis-M thermal sights
> 50 9M133 Kornet anti-tank guided missile launchers

```
                500 9M133 Kornet anti-tank guided missiles
                50 9P163-1 Kornet tripod launchers
                2000 PG-7VLT tandem-charge anti-tank warheads
                1000 PG-7VR 85-millimeter HEAT tandem projectiles
                50 1PN79-1 Kornet thermal sights
                100 Shershen-D anti-tank guided missile launchers
                1000 Shershen-D anti-tank guided missiles
                100 Shershen-D PN-S combat module guidance devices
                100 Shershen-D thermal sights
                100 9M113 Konkurs anti-tank guided missile launchers
                120 9M113 Konkurs anti-tank guided missiles
                100 Konkurs tripod launchers
                100 Konkurs thermal sights
                50 Fagot 9K111 anti-tank guided missile launchers
                500 Fagot 9M111 anti-tank guided missiles
                300 M70 Osa 90-millimeter anti-tank guided missile
                launchers
                800 M79 Osa 90-millimeter anti-tank guided missile
                launchers
                50 9M133 Kornet (Konkurs) anti-tank guided missile
                launchers including tripods and thermal sights
                500 9M133 Kornet (Konkurs) anti-tank guided missiles
                5000 85-millimeter RPG-7 anti-tank launcher including
                telescopic sight
                10,000 PG-7VL 85-millimeter HEAT projectiles
                30,000,000 rounds of 7.62 x 39-millimeter ammunition
                20 SKIF anti-tank guided missile launchers
                100 SKIF missiles anti-tank guided missiles
                3,000,000 rounds of 12.7 x 108-millimeter ammunition
```

Overt Act No. 9:  On or about August 25, 2014, defendant GHANEM and Unindicted Co-Conspirator #1 sent a letter to the Ministry of Defense of the Republic of Iraq offering to sell 9,000 68-millimeter RPG-75 anti-tank rocket launchers on behalf of Gateway to MENA from Gateway to MENA's stock.

Overt Act No. 10:  On or about November 2, 2014, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail containing a document certifying that the Government of Libya was the end user of the following defense articles to be supplied by Gateway to MENA, represented by defendant GHANEM:

```
                10,000 GRAD 122-millimeter rockets
                Three million rounds of 12.7-millimeter ammunition
                150 Konkurs anti-tank missile launchers
                1500 Konkurs anti-tank missiles
                100 sniper rifles
```

```
            16 rocket launchers for MI-24
            2500 AT-2 swatter guided missiles
            2500 AT-6 spiral missiles
            1000 57-millimeter rockets
            1000 80-millimeter rockets
            1000 130-millimeter rockets
            1000 240-millimeter rockets
            16 AGS-17 30-millimeter grenade launchers
```

Overt Act No. 11:  On or about January 7, 2015, defendant

GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-

Conspirator #2 agreed to supply to the Ministry of Defense of

the Republic of Libya, on behalf of Gateway to MENA, the

following defense articles:

```
            1,600,000 rounds of ammunition for ZU-23 23-millimeter
            anti-aircraft gun
            1,300,000 rounds of ammunition for 14.5-millimeter
            anti-aircraft gun
            12,000 120-millimeter mortar rounds
            10,000 Grad 122-millimeter rockets
            5,000,000 rounds of 7.62 x 54-millimeter ammunition
            for PKT machine gun
            50 GP 135-MI anti-tank launchers
            150 9M111M Fagot rockets
            50 9M313 [I]GLA-1 rockets
            5 IGLA-L GP 51G surface-to-air missile launchers
```

Overt Act No. 12:  On or about February 8, 2015, defendant

GHANEM sent to Unindicted Co-Conspirator #1 via e-mail an

invoice from Unindicted Co-Conspirator #3 entitled "COMMERCIAL

invoice 06022" falsely reflecting a $409,000 purchase from

Gateway to MENA to Company A for technical and maintenance

training relating to cargo aircraft.  In the e-mail, defendant

GHANEM noted that the invoice would "cover" the purchase of two

MI-24 attack helicopter computers, the salary for operators of

an Igla surface-to-air missile system, and four sets of night-vision equipment for the MI-24 attack helicopter.

Overt Act No. 13:  On or about February 8, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail noting that the correct price for the aforementioned order with Co-Conspirator #3 and Company A totaled $398,000, rather than $409,000.

Overt Act No. 14:  On or about February 10, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM via e-mail a copy of a bank transfer reflecting a payment of $398,000 from Gateway to MENA to Company A on invoice number 06022.

Overt Act No. 15:  On or about February 10, 2015, defendant GHANEM communicated by e-mail with a supplier, who sent to defendant GHANEM a cover invoice purporting to reflect a purchase of building materials, but in fact reflected a purchase by defendant GHANEM and Unindicted Co-Conspirator #1 of the services of fighter aircraft specialists.

Overt Act No. 16:  On or about February 17, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail about the status of defendant GHANEM's request for defense articles and defense services, including night-vision equipment, attack aircraft pilots, Igla surface-to-air missile operators, reserve

engines and spare parts for military aircraft, and 50,000 pieces of 23-millimeter ammunition.

Overt Act No. 17:   On or about March 9, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #4 a message stating that defendant GHANEM was looking for individuals to operate Igla surface-to-air missiles in Libya, and to train other fighters in the operation of the Igla missile system.   Defendant GHANEM further stated that the Igla operators/trainers would be deployed for two months, but that if they managed to shoot down a plane, they could go home immediately.

Overt Act No. 18:   On or about March 10, 2015, defendant GHANEM met with an undercover agent for the purpose of purchasing and illegally exporting from the Central District of California and elsewhere in the United States weaponry and other military equipment, including PVS-27 night-vision weapon sights, without a license.

Overt Act No. 19:   On or about March 11, 2015, defendant GHANEM again met with an undercover agent for the purpose of purchasing and illegally exporting, from the Central District of California and elsewhere in the United States, weaponry and other military equipment, including PVS-27 night-vision weapon sights, without a license.

Overt Act No. 20:   On or about March 11, 2015, defendant GHANEM placed a telephone call to a prospective buyer of the export-controlled night-vision equipment, including PVS-27 night-vision

weapon sights, that defendant GHANEM planned to illegally export from the Central District of California and elsewhere in the United States, in order to discuss defendant GHANEM's proposed sale of these articles to the prospective buyer.

Overt Act No. 21:  On or about March 11, 2015, defendant GHANEM placed a telephone call to a second prospective buyer of export-controlled night-vision equipment, including PVS-27 night-vision weapon sights, that defendant GHANEM planned to illegally export from the Central District of California and elsewhere in the United States, in order to discuss defendant GHANEM's proposed sale of these articles to the prospective buyer, including the logistics of delivery.

Overt Act No. 22:  On or about March 23, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #1 an e-mail containing product specification and pricing information for PVS-27 night-vision weapon sights that defendant GHANEM and Unindicted Co-Conspirator #1 intended to offer to a customer.  Defendant GHANEM had originally obtained this PVS-27 product specification from an undercover agent, along with an offer to sell these articles to defendant GHANEM at a price lower than the price at which defendant GHANEM subsequently offered it.

Overt Act No. 23:  On or about March 30, 2015, defendant GHANEM sent to a prospective buyer an e-mail containing materials offering to provide, on behalf of Gateway to MENA, certain

enumerated defense articles, including eight Strela surface-to-air missile launchers and 400 Strela surface-to-air missiles.

Overt Act No. 24:   On or about April 3, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail noting Gateway to MENA's payment of $398,000 and referencing defendant GHANEM's purchase of defense articles and defense services, including computers for military aircraft, night-vision equipment, and the salary for Igla surface-to-air missile operators.

Overt Act No. 25:   On or about April 5, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail referencing their agreement that Unindicted Co-Conspirator #3 would provide to defendant GHANEM defense services including three Igla surface-to-air missile operators by April 14, 2015, including one specialist on armament who would provide mechanical services, and 100 to 200 specially trained mercenaries.

Overt Act No. 26:   On or about April 5, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #3 an e-mail clarifying defendant GHANEM's understanding of the terms of his agreement to purchase defense articles and defense services, including defendant GHANEM's agreement to pay the operators of an Igla surface-to-air missile a bonus of $50,000 for each plane shot down.   In this e-mail, defendant GHANEM also sought to clarify the pricing for night-vision equipment for the MI-24 attack helicopter that he intended to purchase from Unindicted Co-Conspirator #3.

<u>Overt Act No. 27:</u>  On or about April 8, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail offering to provide defense articles including ammunition, 23-millimeter guns, and containers for 23-millimeter guns.

<u>Overt Act No. 28:</u>  On or about April 9, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #1 an e-mail containing an attached invoice from Company B, an entity that facilitated money transfers for transactions involving defense articles and defense services.  This invoice falsely reflected the purchase of construction equipment for $111,821.

<u>Overt Act No. 29:</u>  On or about April 12, 2015, defendant GHANEM forwarded to himself an e-mail addressed to Unindicted Co-Conspirator #3 replying to Unindicted Co-Conspirator #3's April 8, 2015 offer to provide defense articles including ammunition, 23-millimeter guns, and containers for 23-millimeter guns.  In this reply, defendant GHANEM indicated that before moving ahead with a new purchase for defense articles, defendant GHANEM wished to clarify the terms of his pending purchase of defense articles and defense services from Unindicted Co-Conspirator #3 including fighter-aircraft computers, night-vision equipment for the MI-24 attack helicopter, and the salary for Igla surface-to-air missile operators and trainers.

<u>Overt Act No. 30:</u>  On or about April 15, 2015, defendant GHANEM and Unindicted Co-Conspirator #2 discussed via e-mail the following subjects related to the conspiracy: 1) their intent to

purchase four MI-24 helicopters, including two without end-user

certificates; 2) their intent to purchase a MIG-29 fighter jet

using a false end-user certificate from a foreign government;

and 3) their intent to transfer defense articles and services to

and from other foreign countries.

Overt Act No. 31:  On or about April 21, 2015, Unindicted Co-

Conspirator #3 sent to defendant GHANEM an e-mail detailing

defendant GHANEM's purchase of defense articles and defense

services from Unindicted Co-Conspirator #3, including fighter-

aircraft computers, night-vision equipment for the MI-24 attack

helicopter, and the salary for Igla surface-to-air missile

operators and trainers.

Overt Act No. 32:  On or about April 21, 2015, defendant GHANEM

replied to Unindicted Co-Conspirator #3's April 21, 2015 e-mail

confirming the details of defendant GHANEM's purchase of defense

articles and defense services from Unindicted Co-Conspirator #3,

including fighter-aircraft computers, night-vision equipment for

the MI-24 attack helicopter, and the salary for Igla surface-to-

air missile operators and trainers.

Overt Act No. 33:  On or about April 27, 2015, defendant GHANEM

sent to Unindicted Co-Conspirator #1 an e-mail containing the

passport information for the two Igla surface-to-air missile

operators and trainers whose defense services defendant GHANEM

and Unindicted Co-Conspirator #1 had purchased.

<u>Overt Act No. 34:</u>  On or about April 28, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM by e-mail the flight itineraries for travel to Misurata, Libya, on April 30, 2015, the two Igla surface-to-air missile operator and trainer whose defense services defendant GHANEM and Unindicted Co-Conspirator #1 had purchased.

<u>Overt Act No. 35:</u>  On or about April 29, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #3 an e-mail containing an attached visa approval letter granting permission for Co-Conspirator #4, Co-Conspirator #5, and Co-Conspirator #6, to travel to Misurata, Libya.

<u>Overt Act No. 36:</u>  On or about May 5, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #1 an e-mail containing two cover invoices falsely reflecting Gateway to MENA's alleged purchase of building materials and equipment from Company B, an entity that facilitated money transfers for transactions involving defense articles and defense services, in the amounts of $306,340 and $292,000.

<u>Overt Act No. 37:</u>  On or about May 6, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail reflecting Unindicted Co-Conspirator #1's payment, on behalf of Gateway to MENA, of Company B's cover invoice in the amount of $306,340.

<u>Overt Act No. 38:</u>  On or about May 30, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #1 an e-mail containing a Company B cover invoice that falsely reflected payment for

28

generators and other building materials and equipment, but in fact documented Gateway to MENA's payment for the service of fighter aircraft pilots.

Overt Act No. 39:  On or about June 3, 2015, Unindicted Co-Conspirator #4 sent to defendant GHANEM an e-mail confirming that Unindicted Co-Conspirator #5 and Unindicted Co-Conspirator #6, the Igla surface-to-air missile operators and trainers whose services defendant GHANEM and Unindicted Co-Conspirator #1 had purchased, remained on duty in Libya on that date.

Overt Act No. 40:  On or about June 4, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail containing bank transfer information indicating that a Company B cover invoice for payment of defense services, specifically salaries for military fighter pilots, had been paid from Gateway to MENA's bank account.

Overt Act No. 41:  On or about June 10, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail containing a document indicating that the Ministry of Defense for the Libyan Salvation Government was the end-user and importer of 4,000,000 rounds of 23-millimeter ammunition, 5,000,000 rounds of 14.5-millimeter by 114-millimeter ammunition, and 10,000 C5 rockets.

Overt Act No. 42:  On or about June 27, 2015, Unindicted Co-Conspirator #2 sent to defendant GHANEM an e-mail containing an

end-user certificate from a foreign government for the following defense articles:

```
20,000 AKS 7.62 assault rifles
20,000 AKM 7.62 assault rifles
10,000,000 rounds of 7.62 x 39-millimeter ammunition
10,000,000 rounds of 7.62 x 54-millimeter ammunition
5,000,000 rounds of 12.7 x 108-millimeter ammunition
5,000,000 rounds of 14.5 x 114-millimeter ammunition
1,000,000 rounds of 23 x 152-millimeter ammunition
1,500 RPG-7 anti-tank grenade launchers
20,000 PG-7V anti-tank grenade launchers
1,500 PKM 7.62 medium machine guns
500 SVD 7.62-millimeter sniper rifles
15,000 60-millimeter mortar shells
12,000 81-millimeter mortar shells
12,000 120-millimeter mortar shells
```

Overt Act No. 43:  On or about July 5, 2015, defendant GHANEM sent an e-mail relating to his pending transfer, with Unindicted Co-Conspirator #2, of various defense articles, including parts for tanks and amphibious armored personnel carriers.

Overt Act No. 44:  On a date unknown, defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2 agreed to supply to the Ministry of Defense of the Republic of Libya, on behalf of Gateway to MENA, the following defense articles:

```
10,000 GRAD 122-millimeter rockets
3,000,000 rounds of 12.7-millimeter ammunition
150 Konkurs 9P135M anti-tank missile launchers
200 laser range finders
100 2000-meter sniper rifles
16 rocket launchers for MI-24 attack helicopters
2500 AT-2 Swatter guided anti-tank missiles
2500 AT-6 spiral missiles
1000 57-millimeter rockets
1000 80-millimeter rockets
1000 130-millimeter rockets
1000 240-millimeter rockets
16 AGS-17 30-millimeter grenade launchers
```

COUNT TWO

[22 U.S.C. §§ 2778(b)(1)(A)(ii), (c); 22 C.F.R. §§ 126.1,

127.1(b)(2)]

40.   From on or about September 4, 2013, to December 8, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAMI NAJM ASAD-GHANEM, also known as ("aka") "Rami Ghanem" ("defendant GHANEM"), knowingly and willfully engaged in the business of brokering activities without first obtaining a license or other approval from the Department of State.

41.   Specifically, defendant GHANEM engaged in negotiating and arranging contracts, purchases, sales, and transfers of defense articles, foreign defense articles, defense services, and foreign defense services, including the following:

| Commodity | Controls |
|---|---|
| 12.7-millimeter NSVT machine guns | USML I |
| 7.62-millimeter AKS assault rifles | USML I |
| 7.62-millimeter AKM assault rifles | USML I |
| 7.62-millimeter PKM medium machine guns | USML I |
| 7.62-millimeter SVD sniper rifles | USML I |
| Sniper rifles | USML I |
| CZ-999 pistols 9-millimeter pistols | USML I |
| Glock 9-millimeter pistols | USML I |
| AK-47 assault rifles | USML I |
| Dragonov sniper rifles | USML I |
| 14.5-millimeter KPVT machine guns | USML II |
| 60-millimeter mortar shells | USML III |
| 81-millimeter mortar shells | USML III |
| 120-millimeter mortar shells | USML III |
| 7.62 x 39-millimeter ammunition | USML III |
| Ammunition | USML III |
| 23-millimeter ammunition | USML III |

| Commodity | Controls |
|---|---|
| Zsu-23-2 23-millimeter ammunition | USML III |
| 5.56 x 45-millimeter ammunition | USML III |
| BS-41 14.5-millimeter ammunition | USML III |
| 9 x 19-millimeter ammunition | USML III |
| Zsu-57-2 57-millimeter anti-aircraft ammunition | USML III |
| M51 37-millimeter anti-aircraft armor-piercing capped trace | USML III |
| 7.62 x 39-millimeter ammunition | USML III |
| 7.62 x 54-millimeter ammunition | USML III |
| 7.62 x 54-millimeter BKC ammunition | USML III |
| 12.7 x 108-millimeter ammunition | USML III |
| Dishka 127 x 108-millimeter ammunition | USML III |
| 14.5 x 114-millimeter ammunition | USML III |
| 23 x 152-millimeter ammunition | USML III |
| D20 152-millimeter tank rounds | USML III |
| M48 76-millimeter tank rounds | USML III |
| D30 122-millimeter towed howitzer heat tank rounds | USML III |
| 12.7 x 108-millimeter ammunition | USML III |
| RPG-7 anti-tank rocket-propelled grenade launcher | USML IV |
| Kornet anti-tank guided missile launchers | USML IV |
| Kornet anti-tank guided missiles | USML IV |
| Igla 9K38 surface-to-air missile launchers | USML IV |
| Igla 9K38 surface-to-air missiles | USML IV |
| MI-24 rocket launchers | USML IV |
| 57-millimeter rockets | USML IV |
| 80-millimeter rockets | USML IV |
| 122-millimeter S-13T rockets | USML IV |
| 122-millimeter S-13 OF rockets | USML IV |
| 130-millimeter rockets | USML IV |
| 240-millimeter rockets | USML IV |
| GRAD 122-millimeter rockets | USML IV |
| 122-millimeter GRAD rocket launcher | USML IV |
| 107-millimeter GRAD rocket launcher | USML IV |
| RPG-7 HEAT rounds | USML IV |
| AT-2 Swatter guided missiles | USML IV |
| AT-6 Spiral missiles | USML IV |
| Konkurs anti-tank missile launchers | USML IV |

| Commodity | Controls |
|---|---|
| Konkurs anti-tank missiles | USML IV |
| AGS-17 30-millimeter grenade launchers | USML IV |
| Anti-tank grenade launchers RPG-7 | USML IV |
| Anti-tank grenades PG-7V | USML IV |
| Fagot 9K111 anti-tank guided missile launchers | USML IV |
| Fagot 9M111 anti-tank guided missiles | USML IV |
| M70 Osa 90-millimeter anti-tank guided missile launchers | USML IV |
| M79 Osa 90-millimeter anti-tank guided missile launchers | USML IV |
| 9M133 Kornet (Konkurs) anti-tank guided missile launchers including tripods and thermal sights | USML IV |
| 9M133 Kornet (Konkurs) anti-tank guided missiles | USML IV |
| 85-millimeter RPG-7 anti-tank launcher including telescopic sight | USML IV |
| PG-7VL 85-millimeter HEAT projectiles | USML IV |
| SKIF anti-tank guided missile launchers | USML IV |
| SKIF anti-tank guided missiles | USML IV |
| Strela surface-to-air missile launchers | USML IV |
| Strela surface-to-air missiles | USML IV |
| M79 Osa RBR 90-millimeter anti-tank guided rocket launchers | USML IV |
| M79 Osa RBR 90-millimeter anti-tank guided rockets | USML IV |
| M79 Osa RBR 90-millimeter anti-tank guided rocket tubes | USML IV |
| 9M151 Metis-M anti-tank guided missile launchers | USML IV |
| 9M131 Metis-M anti-tank guided missiles | USML IV |
| Metis-M tripod launchers | USML IV |
| Konkurs tripod launchers | USML IV |
| 9P163-1 Kornet tripod launchers | USML IV |
| PG-7VLT tandem-charge anti-tank warheads | USML IV |
| PG-7VR 85-millimeter HEAT tandem projectiles | USML IV |
| Shershen-D anti-tank guided missile launchers | USML IV |
| Shershen-D anti-tank guided missiles | USML IV |
| Spare parts for T-72 battle tanks | USML VII |

| Commodity | Controls |
|---|---|
| Spare parts for BTR-80 amphibious armored personnel carriers | USML VII |
| MI-24 attack helicopters | USML VIII |
| MIG-29 fighter jets | USML VIII |
| Operators for Igla surface-to-air missile launchers | USML IX |
| Technicians for Igla surface-to-air missile launchers | USML IX |
| Trainers for Igla surface-to-air missile launchers | USML IX |
| Special forces fighters | USML IX |
| MI-24 attack helicopter pilots | USML IX |
| L39 attack aircraft pilots | USML IX |
| F-1 fighter jet pilots | USML IX |
| MIG-25 fighter pilots | USML IX |
| PVS-27 night-vision weapon sight | USML XII |
| MI-24 night-vision equipment | USML XII |
| Shershen-D thermal sights | USML XII |
| Shershen-D PN-S combat module guidance devices | USML XII |
| 1PBN86-VI Metis-M thermal sights | USML XII |
| Konkurs thermal sights | USML XII |
| 1PN79-1 Kornet thermal sights | USML XII |

COUNT THREE

[18 U.S.C. § 2332g]

A.   OBJECT OF THE CONSPIRACY

42.   From on or about September 9, 2013, to on or about July 1, 2015, defendant RAMI NAJM ASAD-GHANEM, also known as ("aka") "Rami Ghanem," a citizen of the United States ("defendant GHANEM") who is currently located in the Central District of California, together with Unindicted Co-Conspirator #1, Unindicted Co-Conspirator #2, Unindicted Co-Conspirator #3, Unindicted Co-Conspirator #4, Unindicted Co-Conspirator #5, Unindicted Co-Conspirator #6, and others known and unknown to the Grand Jury, knowingly conspired to acquire, transfer directly or indirectly, receive, possess, import, export, and use: 1) an explosive or incendiary rocket or missile that is guided by any system designed to enable the rocket or missile to seek or proceed toward energy radiated and reflected from an aircraft or toward an image reflecting an aircraft, and otherwise direct or guide the rocket or missile to an aircraft; 2) any device designed or intended to launch or guide a rocket or missile; and 3) any part or combination of parts designed or redesigned for use in assembling or fabricating a rocket, missile, or other device in violation of Title 18, United States Code, Section 2332g.

B.   MANNER AND MEANS OF THE CONSPIRACY

43.   The object of the conspiracy was to be accomplished in the manner and by the means described below, among others:

a.   Defendant GHANEM, Unindicted Co-Conspirator #1, Unindicted Co-Conspirator #3, Unindicted Co-Conspirator #4, Unindicted Co-Conspirator #5, Unindicted Co-Conspirator #6, would acquire, transfer directly or indirectly, receive, possess, import, export, and use Igla surface-to-air missile systems to enable Unindicted Co-Conspirator #5, Unindicted Co-Conspirator #6, and others known and unknown to the Grand Jury, to attack aircraft in Libya, in violation of Title 18, United States Code, Section 2332g.

b.   Defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2, would acquire, transfer directly or indirectly, receive, possess, import, export, and use Igla surface-to-air missile systems, in violation of Title 18, United States Code, Section 2332g.

c.   Defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2, would acquire, transfer directly or indirectly, receive, possess, import, export, and use Strela surface-to-air missile systems, in violation of Title 18, United States Code, Section 2332g.

d.   Defendant GHANEM and others known and unknown to the Grand Jury would acquire, transfer directly or indirectly, receive, possess, import, export, and use, other missile systems

designed to destroy aircraft, in violation of Title 18, United States Code, Section 2332g.

C.   OVERT ACTS

44.   In furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant GHANEM, Unindicted Co-Conspirator #1, Unindicted Co-Conspirator #2, Unindicted Co-Conspirator #3, Unindicted Co-Conspirator #4, Unindicted Co-Conspirator #5, and Unindicted Co-Conspirator #6, inclusive, committed the following overt acts, among others:

Overt Act No. 1:   On or about September 9, 2013, defendant GHANEM sent to Unindicted Co-Conspirator #2 an electronic message containing a list of defense articles and services that defendant GHANEM sought to procure, in unspecified quantities, on behalf of a foreign government to be covertly supplied to Libya, Syria, and the Kurdish region of Iraq, including Igla 9K38 surface-to-air missile launchers and Igla 9K38 surface-to-air missiles.

Overt Act No. 2:   On or about September 9, 2013, Unindicted Co-Conspirator #2 replied to defendant GHANEM's inquiry about the list of defense articles identified in Overt Act No. 1 to ask about the desired quantities and the intended destinations for those defense articles.

Overt Act No. 3:   On or about July 30, 2014, defendant GHANEM sent a letter to a foreign government offering to sell certain enumerated defense articles on behalf of Gateway to MENA from

37

Gateway to MENA's stock, including eight Strela surface-to-air missile launchers and 400 Strela surface-to-air missiles.

Overt Act No. 4:  On or about January 7, 2015, defendant GHANEM, Unindicted Co-Conspirator #1, and Unindicted Co-Conspirator #2 agreed to supply to the Ministry of Defense of the Republic of Libya, on behalf of Gateway to MENA, defense articles and services including 5 IGLA-L 9P519 surface-to-air missile launchers.

Overt Act No. 5:  On or about February 8, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #1 via e-mail an invoice from Unindicted Co-Conspirator #3 entitled "COMMERCIAL invoice 06022" falsely reflecting a $409,000 purchase from Gateway to MENA to Company A for technical and maintenance training relating to cargo aircraft.  In the e-mail, defendant GHANEM noted that the invoice would "cover" the purchase of enumerated defense articles and services including the salary for operators of an Igla surface-to-air missile system.

Overt Act No. 6:  On or about February 8, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail noting that the correct price for the aforementioned order with Unindicted Co-Conspirator #3 and Company A totaled $398,000, rather than $409,000.

Overt Act No. 7:  On or about February 10, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM via e-mail a copy of a

bank transfer reflecting a payment of $398,000 from Gateway to MENA to Company A on invoice number 06022.

Overt Act No. 8:  On or about February 17, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail about the status of defendant GHANEM's request for defense articles and defense services, including Igla surface-to-air missile operators.

Overt Act No. 9:  On or about March 9, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #4 a message stating that defendant GHANEM was looking for individuals to operate Igla surface-to-air missiles in Libya, and to train other fighters in the operation of the Igla missile system.  Defendant GHANEM further stated that the Igla operators/trainers would be deployed for two months, but that if they managed to shoot down a plane, they could go home immediately.

Overt Act No. 10:  On or about March 30, 2015, defendant GHANEM sent to a prospective buyer an e-mail containing materials offering to provide certain enumerated defense articles, including eight Strela surface-to-air missile launchers and 400 Strela surface-to-air missiles.

Overt Act No. 11:  On or about April 3, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail noting Gateway to MENA's payment of $398,000 and referencing defendant GHANEM's purchase of defense articles and defense services, including the salary for Igla surface-to-air missile operators.

Overt Act No. 12:  On or about April 5, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail referencing their agreement that Unindicted Co-Conspirator #3 would provide to defendant GHANEM defense services including three Igla surface-to-air missile operators by April 14, 2015, including one specialist on armament who would provide mechanical services.

Overt Act No. 13:  On or about April 5, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #3 an e-mail clarifying defendant GHANEM's understanding of the terms of his agreement to purchase defense articles and defense services, including defendant GHANEM's agreement to pay the operator of an Igla surface-to-air missile a bonus of $50,000 for each plane shot down.

Overt Act No. 14:  On or about April 12, 2015, defendant GHANEM forwarded to himself an e-mail addressed to Unindicted Co-Conspirator #3 replying to Unindicted Co-Conspirator #3's April 8, 2015 offer to provide defense articles including ammunition, 23-millimeter guns, and containers for 23-millimeter guns.  In this reply, defendant GHANEM indicated that before moving ahead with a new purchase for defense articles, defendant GHANEM wished to clarify the terms of his pending purchase of defense articles and defense services from Unindicted Co-Conspirator #3 including the salary for Igla surface-to-air missile operators and trainers.

Overt Act No. 15: On or about April 21, 2015, Unindicted Co-Conspirator #3 sent to defendant GHANEM an e-mail detailing defendant GHANEM's purchase of defense articles and defense services from Unindicted Co-Conspirator #3, including the salary for Igla surface-to-air missile operators and trainers.

Overt Act No. 16: On or about April 21, 2015, defendant GHANEM replied to Unindicted Co-Conspirator #3's April 21, 2015 e-mail confirming the details of defendant GHANEM's purchase of defense articles and defense services from Unindicted Co-Conspirator #3, including the salary for Igla surface-to-air missile operators and trainers.

Overt Act No. 17: On or about April 27, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #1 an e-mail containing the passport information for Unindicted Co-Conspirator #5 and Unindicted Co-Conspirator #6, the Igla surface-to-air missile operators and trainers whose services defendant GHANEM and Unindicted Co-Conspirator #1 had purchased.

Overt Act No. 18: On or about April 28, 2015, Unindicted Co-Conspirator #1 sent to defendant GHANEM an e-mail containing a flight itinerary for travel by Unindicted Co-Conspirator #5, one of the Igla surface-to-air missile operators and trainers whose services defendant GHANEM and Unindicted Co-Conspirator #1 had purchased, to Misurata, Libya, on April 30, 2015.

Overt Act No. 19: On or about April 29, 2015, defendant GHANEM sent to Unindicted Co-Conspirator #3 an e-mail containing an

1  attached visa approval letter granting permission for Co-

2  Conspirator #4, Co-Conspirator #5, and Co-Conspirator #6, to

3  travel to Misurata, Libya.

4  <u>Overt Act No. 20:</u>  On or about June 3, 2015, Unindicted Co-

5  Conspirator #4 sent to defendant GHANEM an e-mail confirming

6  that Unindicted Co-Conspirator #5 and Unindicted Co-Conspirator

7  #6, the Igla surface-to-air missile operators and trainers whose

8  services defendant GHANEM and Unindicted Co-Conspirator #1 had

9

10  purchased, remained on duty in Libya on that date.

11

12

13

14

15                                        A TRUE BILL

16

17                                        _____/s/_____
                                          Foreperson

18
     SANDRA R. BROWN
19   Acting United States Attorney

20

21

22   PATRICK R. FITZGERALD
     Assistant United States Attorney
23   Chief, National Security Division

24   CHRISTOPHER GRIGG
     Assistant United States Attorney
25   Chief, Terrorism and Export Crimes Section

26   MELISSA MILLS
     Assistant United States Attorney
27   Terrorism and Export Crimes Section

28