MICHAEL S. EVANS
State Bar No. 146748
350 South Grand Avenue
32nd Floor
Los Angeles, California 90071
(310) 545-8192 (Telephone)
(310) 352-4036 (Facsimile)
criminaldf@aol.com (Email)

H. DEAN STEWARD
State Bar No. 85317
107 Avenida Miramar, Suite C
San Clemente, CA 92672
(949) 481-4900 (Telephone)
(949) 496-6753 (Facsimile)

Attorney for Defendant
RAMI GHANEM

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) 15-CR-704-SJO |
| Plaintiff, | ) |
| | ) DEFENDANTGHANEM'S |
| v. | ) SENTENCING MEMORANDUM |
| | ) |
| RAMI GHANEM, | ) |
| Defendant. | ) |
| | ) |
| | ) |

Defendant Rami Ghanem hereby files this Sentencing Memorandum asking the

Court to impose a sentence of 135 months in prison.

Dated:    April 15, 2019                        Respectfully Submitted,

                                                s/Michael S. Evans
                                                MICHAEL S. EVANS
                                                H. DEAN STEWARD
                                                Attorney for Defendant
                                                RAMI GHANEM

1

**The Applicable Advisory Sentencing Range Is 135-168Months.**

This Court first must consider the applicable advisory sentencing range calculated pursuant to the United States Sentencing Guidelines ("Guidelines") taking into account a defendant's total offense level and criminal history category when determining the appropriate sentence to impose in this case.   See, 18 U.S.C. §3553(a)(4).   "[T]he Guidelines factor [should not] be given more or less weight than any other.   While the Guidelines are to be respectfully considered, they are one factor among the §3553(a) factors that need to be taken into account in arriving at an appropriate sentence."   United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008).

In his Objections to the Presentence Investigation Report, Ghanem has set forth his position that the applicable Guideline range is 135-168 months.   Ghanem incorporates herein the arguments from his Objections to the Presentence Investigation Report into this Memorandum in support of this position.

**Kinds Of Sentences Available To The Court**

Pursuant to 18 U.S.C. §3553(a)(3), this Court must consider the kinds of sentences available.   This "court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in §3553(a) to the extent they are applicable."   18 U.S.C. §3582(a).

When making this determination whether to impose a term of imprisonment, it is important to note that Congress intended that "prison resources, first and foremost,

[would be] reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and "in cases of nonviolent or non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service."   See, Sentencing Reform Act of 1984, Pub. L. No. 98-473, §§ 217(a), 98 Stat. 1987, 2039 (1984).

The advisory Guideline sentencing range in this case is 135-168 months.   A probationary sentence, house arrest or community confinement are not sentencing options available to this Court.A25 year mandatory sentence is required by statute, but as set forth in a motion filed by Ghanem previously, would constitute cruel and unusual punishment and for that reason should not be imposed.   This Court also can recommend that Ghanem enter an alcohol/drug treatment program when he has 30 months remaining to serve on his sentence.   Finally, because he will be appealing the conviction in this case and his appellate counsel will be located in Southern California, this Court can recommend that the Bureau of Prisonsplace Ghanem in a facility in Southern California.

**Nature And Circumstances Of The Offense.**

Pursuant to 18 U.S.C. §3553(a)(1), this Court also must consider the nature and circumstances of the offense and individual characteristics and history of the defendant.As to the nature and circumstances of the offense, the crime involved

3

hereininvolves allegations that Ghanem purchased, sold, imported, exported, used or threatened to use surface-to-air missiles.   Yet, the evidence at trial showed Ghanem never sold, purchased, imported or exported any surface-to-air missiles nor did he enter into any agreements to do so, despite numerous efforts by an undercover agent to engage him in such activities.   At most, Ghanem solicited many persons for the purchase of surface-to-air missiles which were never consummated.

The only evidence of a consummated agreement was for Ghanem to provide the Libyan government based in Tripoli with two surface-to-air missile operators to work at an airbase in Misrata.   Although the two surface-to-air missile operators flew to and stayed in Misrata for a period of approximately 6-8 weeks, they never intended to use nor were they able to operate or use a surface-to-air missile while in Libya.

Both Gia Devidze and ZurabPartsakashvili admitted that neither they nor anyone used a surface-to-air missile while they were in Libya.   Although they were told they were hired to operate Igla surface-to-air missiles, none of theIgla missiles at the Misrata air base were functional or repairable.   At most, there were four Strela missiles in total at the air base.

Devidze was not qualified or trained to operate any surface-to-air missiles. His only military training and experience was as a driver for generals in the Georgian army.   He admitted the only surface-to-air missile "training"he received was for

4

a total of five minutes on a simulator ten years prior to arriving in Libya.   Devidze claimed that Partsakashvili trained him while they were together in Libya, but Partsakashvili denied that he provided any training on surface-to-air missiles to Devidze.   Thus, if he had been called on to fire a surface-to-air missile while he was in Libya, Devidze would not have been able to do so.

Partsakashvili testified that he had a faulty right eye and could not fire the Strela missiles that were brought to the air base after his arrival.   Although he claimed to train Libyan soldiers how to use surface-to-air missiles over a two or three day period, this limited amount of training is insufficient to teach someone to use these sophisticated weapons.   Per the Government's own expert Dr. Doherty, in order for someone to be properly trained to use surface to air missiles, they need to have written manuals, months of classroom teaching, time using a simulator and field experience firing these missiles.   At trial, there was no evidence of manuals written in Arabic given to any Libyan soldiers.   None of the Libyan soldiers were in classrooms for months learning this skill.   There was no evidence that Devidze, Partsakashvili or Sandro Kavsadzebrought simulators when they arrived in Misrata, nor were there any at the air base when they arrived.   Finally, there was no evidence of test firing any surface-to-air missiles by Libyan soldiers presented at trial.

Devidze's claims regarding his day to day activities raise doubt whether the Strela missiles were ever taken out of the packages or boxes after they were shipped

to Libya.   Devidze testified that he would arrive at the airbase at 7 a.m., move the missiles to a shaded location under a tree, remain there with Partsakashvili until 7 p.m., and afterwards remove the batteries from themissiles and return the missiles to the area where they would be stored overnight.   Whereas, Partsakashvili denied that this daily ritual ever occurred.   Dr. Doherty also testified that batteries are never removed from the missiles.   In addition, if Devidze's testimony is taken at face value, this would mean that theLibyan government relied upon a total of four surface-to-air missiles to protect their air base and intentionally left the airbase vulnerable for a twelve hour period without anyone manning the missiles in case of air attack from 7 p.m. until 7 a.m.   This scenario is not credible, especially when the Government in Tripoli was in the midst of a civil war and under threat of attack from the rival government located in the eastern part of the country.   Furthermore, it should be pointed out that Devidze was not able to identify correctly a Strela missile when one was shown to him at trial.   All of the above further supports Partsakashvili's testimony that the Strelaor any surface-to-air missiles were never intended to be used in the first place.

The crime of selling, purchasing or using surface to air missiles on the international market without authorization from the United States Government potentially poses a serious threat to the safety of the international community.   Yet, as set forth above, the evidence presented at trial regarding Ghanem's actions relating

to the commission of this crime show that he engaged in massive solicitations which never came to fruition in terms of the purchase of these missiles.   The one agreement he entered into with the Georgian mercenaries to operate the surface to air missiles for the Libyan Government would never have resulted in the use or firing of these missiles in the first place.   The nature and circumstances of this crime warrant a variance from any mandatory minimum sentence at issue for thiscrime and the imposition of the low end of the applicable Guideline range or 135 months.

**The Individual Characteristics Of The Defendant.**

"Surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance.   The elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant'."   United States v. Adelson, 441 F.Supp.2d 506 (S.D.N.Y. 2006).

As to his individual characteristics and history, Ghanem has lost his father who was the primary means of financial support for this family at the age of sixteen. Two years later, Ghanem migrated to the United States and put himself through school.   At the age of twenty four, he started his own business in Texas.

Throughout his work history, Ghanem has been hard-working and self-employed person who started and developed over seventeen different companies.

Ghanem did not only participate in the business of arms sales while in Libya. From 2012-15, Ghanem was appointed by the Prime Minister to be a member of an internal "core" groups to advise the Libyan Government on how to combat and destroy ISIS.

In 2015, two United States business men met in a restaurant in Tripoli discussing plans to visit various parts of the country to collect information and exemplars of weapons being used by ISIS.   Ghanem obtained their business cards and contact information.   He was unable to warn them about the dangers of engaging in this type of discussion in public while they were in Tripoli, but forwarded this warning to them in the United States.

Later that year, their employer contacted Ghanem because they had been arrested in Libya.   Using his connections in Libya and the United States Embassy in Tunisia, Ghanem arranged for the two men to be release unharmed.   Through his actions, Ghanem saved the lives of both of these United States business men.

Ghanem's goodwill was not just spread throughout Libya, In 2006 in the Anbar Provence of Iraq, pro-Al Qaida Sunni fighters were attacking United States forces there and inflicting heavy casualties.   Ghanem put a senior Iraqi Sunni tribesman who he knew in contact with United States military personnel to facilitate a dialogue

and a proposal for fair treatment of Sunni's in the area in exchange for a ceasefire and peace in the area.   United States military personnel were not prepared to begin this dialogue and the violence continued for almost one year until General David Petraeus put into effect the original proposal Ghanem sought to initiate originally.   Many lives would have been saved had United States accepted Ghanem's original proposal and entered into the dialogue one year earlier.

Ghanem also met with Iraqi Prime Minister Malachi and assisted him in Iraq's fight against ISIS.   He further assisted opening the communication channels between Iraq and the government of Jordan.

Finally, Ghanem along with former Delta Force member Norman Hooten helped King Abdullah of Jordan open a military training facility in Jordan.   This military facility trained Jordanian and military personnel from other foreign countries, all consistent with United States military interests.

As part of evaluating a defendant's individual characteristics, a court may consider the impact incarceration would have on his family members.   United States v. Schroeder, 536 F.3d 746, 756 (7th Cir. 2008).   In this case, Ghanem has three young children who are all in school and a wife who prior to his incarceration relied upon him for financial and emotional support.   Ghanem's incarceration not only cuts off their line of financial support, but also leaves a void in his children's lives as they are without a father to guide them through their formative years as young adults.

The individual characteristics of the defendant, and the impact incarceration would have upon Ghanem and his family warrants a 135 month sentence in this case.

**Seriousness Of The Offense And The Need To Provide Just Punishment**

Pursuant to 18 U.S.C. §3553(a)(2)(A), this Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.   A "just punishment" is one that fits the crime committed.   Simon v. United States, 361 F.Supp.2d 35, 43 (E.D.N.Y. 2005). The punishment imposed should not be unreasonablyharsh under all of the circumstances of the case.   United States v. Wilson, 350 F.Supp.2d 910 (D. Utah 2005).

In this case,the nature and circumstances of Ghanem's actions outlined above show that a sentenceat the low end of the Guideline range or 135 months would be a just punishment which fits the offense at issue here.It should be noted that the imposition of a 25 year sentence would be harsh considering that such a sentence constitutes approximately twice the amount of the high end of the recommended Guideline sentencing range.

**Adequate Deterrence To Criminal Conduct and Protection For The Public From Further Crimes**

This Court also must consider the need for the sentence to afford adequate deterrence to criminal conduct and the need for the sentence to protect the public from further crimes of the defendant.See, 18 U.S.C. §§ 3553(a)(2)(B) and (C).

Whether this Court chooses the applicable Guideline range with a low end sentence of 135 months or the 25 year mandatory minimum sentence, Ghanem will be punished severely for his actions in this case.   In light of the fact that no surface-to-air missiles were ever purchased, sold, imported, exported or used, either of these sentences is a harsh punishmentand will provide a deterrent effect upon Ghanem.

If this Court imposes a sentence at the low end of the guideline or 135 months, Ghanem will be in his early 60's when he is eligible to be released from prison.   If this Court imposes the 25 year mandatory minimum sentence, Ghanem will be seventy five years old when he is eligible to be released from prison.   In all likelihood, the imposition of a 25 years sentence will amount to a death sentence for Ghanem.   Because of this fragile physical condition and terrible current health, Ghanem probably will not survive 25 years in custody.Assuming he is able survive a lengthy prison sentence, Ghanem will be at least in his early 60's if he is sentenced to 135 months or in his mid-70's if he is sentenced to 25 years when he is released from prison, an age when the chances of recidivism is low for most individuals.

In addition, the convictions in this case will make it known to the international arms community that he is not a credible partner with whom to do this type of business.   Per the evidence presented at trial, for over five years, Ghanem solicited others for the sale of surface-to-air missiles without being able to consummate one deal during this time.   Per his history in the business of buying or selling surface-to-

11

air missiles, Ghanem has proven to be a poor negotiator and facilitator of these types of deals to show that the risk of future conduct in this area is low.

For these reasons as well, the Court should impose 135 monthsentence in this case.

### Educational or Vocational Training And Medical Care For Defendant

Pursuant to 18 U.S.C. §3553(a)(2)D), this Court must consider the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.Ghanem has significant health issues that will need to be addressed while incarcerated including high cholesterol, blood pressure, diabetes, neuropathy, back pain, sciatic nerve pain, sleep apnea, skin problems, major dental problems and vitamin deficiencies.   He takes over fourteen medications per day to address these issues. This Court will need to recommend a prison facility that is equipped to address Ghanem's medical issues.

Ghanem also has a history of alcohol abuse and depression.   Ghanem seeks to participate in an alcohol abuse program while at the Bureau of Prisons and asks this Court to recommend that he participate in the alcohol abuse programs available to prisoners when they have 30 months remaining to serve on their sentence.

Ghanem respectfully requests this Court to consider these medical and psychological needs when sentencing him in this case and to recommend he

participate in the Bureau of Prison's special alcohol/drug program for prisoners when he has 30 months remaining to serve on his sentence.

### Pertinent Policy Statements

Pursuant to 18 U.S.C. §3553(a)(5), this Court must consider any pertinent policy statement in effect on the date of sentencing.  There are no other pertinent policy statements other than the ones noted above that are applicable to this case.

### Avoid Sentencing Disparities

Pursuant to 18 U.S.C. §3553(a)(6), this Court must structure a sentence to avoid unwarranted sentencing disparities among defendants. There is no issue of sentencing disparity among defendants in this case.

### Restitution

Finally, this Court must consider the need to provide restitution to any victims of the offense.  See, 18 U.S.C. §3553(a)(7).  There is no issue of restitution owed to any victim in this case.

### CONCLUSION

For the above reasons, this Court should find the advisory sentencing guideline range applicable to this case is 135-168 months.  After considering the sentencing factors in 18 U.S.C. §3553(a) as set forth above and the other sentencing motion filed herein, Ghanem asks this Court to strike the mandatory minimum sentence of 25 years and impose a sentence of 135 months in custody with a recommendation that he

be allowed to participate in the Bureau of Prisons alcohol/drug program when he has

30 months remaining on his time to serve in custody.    Finally, Ghanem requests this

Court to recommend the Bureau of Prisons place him in a federal facility near

Southern California.

Dated:April 15, 2019                                Respectfully Submitted,

                                                    /s/ MICHAEL S. EVANS
                                                    MICHAEL S. EVANS
                                                    H. DEAN STEWARD
                                                    Attorney for Defendant
                                                    RAMI GHANEM