**Mi17 - Flight Crew**
Pilot and Co-Pilot
$300 x 2 = $600

Flight Engineer
$200 x 1 = $200

$800 per helicopter x 2 = $1,600 per day

x 30 days = $48,000 per month

**12 month base salary $576,000.00**

KnR Insurance = $200 per person per day x 30 = $18,000 per month
Life Insurance = $150 per day x 3 = $13,500 per month
Medical Insurance = $100 per day per person x 30 = $9,000 per month
Medivac Insurance = $100 per day per person x 30 = $9,000 per month

12 month insurance costs $49,500 per month

**12 month cost $1,170,000.00**

Hazardous Duty Pay 10% = $117,000.00

Daily per diem $100 x 3 = $300 x 30 = $9,000 per month
$108,000

Housing and Security $12,000 per month
$144,000

Airline Flights $2,000 x 3 = $6,000
$36,000

**Total $1,575,000**

Mercenaries Ltd Project Management Fee $315,000

**12 Month Grand Total $1,890,000**

Monthly Cost $157,500

**Mi24 - Flight Crew**
Pilot and Co-Pilot
$500 x 2 = $1,000

Flight Engineer
$200 x 1= $200

Weapons Systems Engineer
$200 x 1 = $200

$1,400 per Helicopter x 2 = $2,800 per day

x 30 Days = $84,000 per month
**12 month base contract $1,008,000.00**

KnR Insurance = $200 per person per day x 30 = $24,000 per month
Life Insurance = $150 per day x 4 = $18,000 per month
Medical Insurance = $100 per day per person x 30 = $12,000 per month
Medivac Insurance = $100 per day per person x 30 = $12,000 per month

12 month insurance costs $66,000 per month

**12 month cost $1,800,000.00**

Hazardous Duty Pay 10% = $180,000.00

Daily per diem $100 x 4 = $400 x 30 = $12,000 per month
$108,000

Housing and Security $12,000 per month
$144,000

Airline Flights $2,000 x 4 = $8,000
$48,000

**Total $2,280,000**

Mercenaries Ltd Project Management Fee $456,000

**12 Month Grand Total $2,736,000**

Monthly Cost $228,000

Ghanem_00000241

Ghanem_Sentencing_00000897

**GSE**

1 Engineer

2 Mechanics

2 Technicians

1 Weapons Engineer

$200 x 6 = $1,200

x 30 Days = $36,000 per month
**12 month base contract $432,000.00**

KnR Insurance = $200 per person per day x 30 = $36,000 per month
Life Insurance = $150 per day x 6 = $27,000 per month
Medical Insurance = $100 per day per person x 30 = $18,000 per month
Medivac Insurance = $100 per day per person x 30 = $18,000 per month

12 month insurance costs $99,000 per month

**12 month cost $1,188,000.00**

Hazardous Duty Pay 10% = $118,000.00

Daily per diem $150 x 6 = $900 x 30 = $27,000 per month
$162,500

Housing and Security $33,000 per month
$396,000

Airline Flights $2,000 x 6 = $12,000
$72,000

**Total $1,903,500**

Mercenaries Ltd Project Management Fee $387,300

**12 Month Grand Total $2,290,800**

Monthly Cost $190.900

Ghanem_00000241

**MI17 Helicopter Pilot Cost**

12 Month Grand Total $1,890,000
Monthly Cost $157,500

**MI24 Helicopter Pilot Cost**

12 Month Grand Total $2,736,000
Monthly Cost $228,000

**GSE**

12 Month Grand Total $2,290,800
Monthly Cost $190,900

**Grand Total Cost $6,916,800**

Monthly Cost $576,400

$1,729,200 Deposit (3 months)

Mercenaries Ltd Project Management Fee $387,300
Mercenaries Ltd Project Management Fee $315,000
Mercenaries Ltd Project Management Fee $456,000

**Net Profit of Mercenaries Ltd Project Management Fee $1,158,300**

Ghanem_00000241

Ghanem_Sentencing_00000899

CASE NO.   CR 15-0704 (A)-SJO

_____ UNITED STATES OF AMERICA _____
VS. ____ GHANEM

PLAINTIFF'S EXHIBIT   ___719___

DATE _____ IDEN.

DATE_____ EVID.

BY _____
          DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Rami Ghanem <ramithe@gmail.com> |
| **Sent:** | Thursday, November 13, 2014 3:27 AM |
| **To:** | Mohd <aldaboubim@gmail.com> |
| **Subject:** | Crew.xlsx |
| **Attach:** | Crew.xlsx; Crew offer.docx |

 <<...>> <<...>>

Ghanem_00000241

Ghanem_Sentencing_00000901

Sallary Costs

| Functional | Qty | Salary price per month in USD | Total Salary price per 12 month in USD | |
|---|---|---|---|---|
| Captain | 2 | 12,428 | 298,272.00 | |
| Co Pilot | 2 | 11,715 | 281,160.00 | |
| Flight Engineer | 2 | 11,715 | 281,160.00 | |
| Had engineer for Engine and Arms | 1 | 11,785 | 141,420.00 | |
| Engine Technician | 1 | 9,571 | 114,852.00 | |
| Radio and Avionic Technician | 1 | 9,571 | 114,852.00 | |
| Arms Technician | 1 | 9,571 | 114,852.00 | |
| | | Sub Total : | **1,346,568.00** | |

Additional copsts

| | | Add cost per month in USD | | |
|---|---|---|---|---|
| Per Dim (daily for each Function) | 10 | 50 | 180,000.00 | 30 days in each month |
| Translator addition amount per month | 1 | 50 | 600.00 | |
| | | Sub Total : | **180,600.00** | |

| | | Grand Total: | **1,527,168.00** | |
|---|---|---|---|---|

One time costs (in aqddition)

| | | | | |
|---|---|---|---|---|
| Full Hospitality | 10 | - | - | |
| General Insurance and Health Insurance | 10 | - | - | |
| Visa | 10 | 150.00 | - | |
| One night hotel in Kiev before departure | 10 | - | - | |
| Mobalization Fees | 10 | 5,000.00 | 50,000.00 | One time fee |
| Flight Tickets | | - | - | |
| | Addition Total amount : | | **50,000.00** | |

| | Total | 1,577,168.00 |
|---|---|---|

November 11, 2014

Subject: Offer for Arial and Ground Crew employment

Further to your requirement for Arial and Ground Crew of Mi-24 Helicopters , we have made the arrangement and have already found the professional Group  follows:

The offer given is upon the service condition at the destination, missions and habitat .

The Arial and Technicians Group include 2 Arial teams and 1 technician team.

The mission is for one year (12 month)

Functionary as follows:

| Functionaries | For one team | For second team | Total Functionaries | |
|---|---|---|---|---|
| ✓ Captain | 1 | 1 | 2 | |
| ✓ Co Pilot | 1 | 1 | 2 | |
| ✓ Flight Engineer | 1 | 1 | 2 | |
| ✓ Helicopter Technicians | | | | |
| - Had engineer for Engine  and Arms | 1 | 1 | 1 | Will be the chief of the Group |
| - Engine Technician | 1 | 1 | 1 | |
| - Radio and Avionic Technician | 1 | 1 | 1 | |
| - Arms Technician | 1 | 1 | 1 | |

Total  Functionaries :        10

Ghanem_00000241

00096194.pdf

Ghanem_00000241

**Functionary's Monthly salary of Service costs**

| Functional | Salary price per month in USD | remarks |
|---|---|---|
| Captain | 12,428 | |
| Co Pilot | 11,715 | |
| Flight Engineer | 11,715 | |
| Had engineer for Engine and Arms | 11,785 | |
| Engine Technician | 9,571 | |
| Radio and Avionic Technician | 9,571 | |
| Arms Technician | 9,571 | |

**Additional costs**

| | | |
|---|---|---|
| Per Dim (daily for each Function | 50 | |
| Translator addition amount per month | 50 | One of the Functionary will be the translator |
| Full Hospitality | | In reasonable habitat. Tents habitat will be 50 Usd charged |
| General Insurance and Health Insurance | | Insurance policy must to be issued by the Supplier In Ukraine, and will paid by the employer |
| Flight Tickets - Arrival from East Europe to the destination | | |

Ghanem_00000241

| - Departure from the destination  back To  East Europe<br>- Flight Tickets each 6 Month for vacation  in East Europe<br>(Departure and back Arrival) | |
|---|---|
| Visa | 150 |
| One night hotel in Kiev before departure | 200 |
| Mobilization fees ( one time / each person ) | 5000 |

## Obligations

### The SUPPLIER

| | |
|---|---|
| Will collect the Provisional Crew | |
| Will submit the professional Certificates of the pilots and Technicians | |
| Salary payments in Ukraine or in the destination account | |
| General Insurance and Health Insurance | Insurance policy must to be issued by the Supplier In Ukraine, and will paid by the employer |
| replace any or each Foremen this will not be productive | |
| One night hotel in Kiev before departure | Will be paid by the employer |
| Full scullery at the vacation period | |

### The EMPLOYER

| | |
|---|---|
| Full Hospitality | |

Ghanem_00000241

| | |
|---|---|
| General Insurance and Health Insurance | The policy will be issued by the Supplier In Ukraine and the cost will be cover by the Employer |
| Flight Tickets<br><br>- Arrival from East Europe to the destination<br><br>- Departure from the destination  back To  East Europe<br><br>- Flight Tickets each 6 Month for vacation in East Europe (Departure and back Arrival) | |
| Professional data books of the Mi -24 Helicopters | |
| Pilot Helmets for the Mi-24 Pilot | |

Payment:

First 3 month payment and additional costs in advance, as well as Tickets for arrival and departure

Then Each 3 month costs in advance

Payment will be transfer to the Supplier up to the 10th of each month

Ghanem_00000241

## Subject: requirements for new Mi 24 pilot

1. The list below includes the requirements that the new pilot will be able to achieve.

2. The list is sorted by order of importance.

   a. The pilot is capable to speak and understand English (Including terms from the flight world).

   b. The pilot has history as an instructor of Mi-24.

   c. The pilot flew a Mi 24 in the past 3 years.

   d. The pilot has at least 1000 hours on Mi-24.

   e. The pilot worked in Africa before as a fighter pilot (Advantage).

   f. The pilot flew Night sorties on Mi 24 in the past 3 year.

   g. The pilot has no history of getting expelled out of a program before (advantage).

   h. The pilot has some knowledge about advanced avionics (advantage).

CASE NO.   CR 15-0704 (A)-SJO

UNITED STATES OF AMERICA
VS.   GHANEM

PLAINTIFF'S EXHIBIT   720

DATE _____ IDEN.

DATE _____ EVID.

BY _____
DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Rami Ghanem <ramithe@gmail.com> |
| **Sent:** | Thursday, December 4, 2014 4:54 PM |
| **To:** | tomasweis9@gmail.com |
| **Subject:** | RE: Contact |

Can you get me a complete crew for the F1? For 2 aircrafts ( 2 pilots, 4 technical guys)

I am looking for 2 Su 24 or MiG ready for deliver, do you have? With their crews

Regards

-----Original Message-----
From: tomasweis9@gmail.com [mailto:tomasweis9@gmail.com]
Sent: Thursday, December 4, 2014 1:55 AM
To: Ghanem Rami
Subject: Contact

Good Evening,
Its too late, please call me tomorow morning about 10:00.
Thanke you
Thomas

CASE NO.   CR 15-0704 (A)-SJO

UNITED STATES OF AMERICA
VS.   GHANEM

PLAINTIFF'S EXHIBIT   721

DATE _____ IDEN.

DATE_____ EVID.

BY _____
DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Gerton Business <gerton.businessllp@gmail.com> |
| **Sent:** | Friday, December 12, 2014 5:08 PM |
| **To:** | Rami Ghanem <ramithe@gmail.com> |
| **Subject:** | |
| **Attach:** | costs sumary (39).xlsx |

hotel and glight tickets you know better

## Sallary Costs

| Functional | Qty | Salary price per month in USD | Total Salary price per 12 month in USD | |
|---|---|---|---|---|
| Captain | 2 | 18,000 | 108,000.00 | |
| Had engineer for Engine and Arms | 1 | 8,200 | 24,600.00 | |
| Engine Technician | 1 | 8,200 | 24,600.00 | |
| Arms Technician | 1 | 8,200 | 24,600.00 | |
| | | Sub Total : | **181,800.00** | |

## Additional copsts

| | | Add cost per month in USD | | |
|---|---|---|---|---|
| Per Dim (daily for each Function) | 5 | 30 | 13,500.00 | 30 days in each month |
| | | Sub Total : | **13,500.00** | |

Grand Total: **195,300.00**

## One time costs (in aqddition)

| Full Hospitality | 5 | - | - | |
|---|---|---|---|---|
| General Insurance and Health Insurance | 5 | 5,630.00 | 28,150.00 | |
| One night hotel in  before departure | 10 | - | - | |
| Flight Tickets | | - | - | |
| | Addition  Total amount : | | | |

Ghanem_00000241

Ghanem_Sentencing_00000912

CASE NO.   CR 15-0704 (A)-SJO

UNITED STATES OF AMERICA
VS.   GHANEM

PLAINTIFF'S EXHIBIT   722

DATE _____IDEN.

DATE_____EVID.

BY _____
DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Rami Ghanem <ramithe@gmail.com> |
| **Sent:** | Sunday, December 14, 2014 12:35 PM |
| **To:** | Mohd <aldaboubim@gmail.com> |
| **Subject:** | L39 passports |
| **Attach:** | Grygorit Sherstobitov.jpg; Pavlo Kanilov passport.jpg; Volodymyr Gurevski.jpg; Volodymyr Nikitin.jpg; Yuriy Galenko.jpg |



00092994                              Ghanem_00000241



00092995                                Ghanem_00000241



*Паспорт є власністю України*
*This passport is the property of Ukraine*

Іменем України Міністр закордонних справ України просить усіх, кого це може стосуватися, всіма можливими заходами полегшити поїздку пред'явника паспорта і надавати йому необхідну допомогу та захист.

In the name of Ukraine, the Minister of Foreign Affairs of Ukraine requests all those whom it may concern to facilitate in every possible way the travel of the bearer of this passport and to provide the bearer with all necessary assistance and protection.

УКРАЇНА ⬥ UKRAINE

ПАСПОРТ
PASSPORT



Тип/ *Type*   Код держави/ *Country code*   Номер паспорта/ *Passport No.*
P   UKR   EA499802

Прізвище/ *Surname*
ГУРЕВСЬКИЙ/GUREVSKYI

Ім'я/ *Given Names*
ВОЛОДИМИР/VOLODYMYR

Громадянство/ *Nationality*
УКРАЇНА/UKRAINE

Дата народження/ *Date of birth*   Персональний номер/ *Personal No.*
24 ЛЮТ/FEB 51   1868215973

Стать/ *Sex*   Місце народження/ *Place of birth*
Ч/M   РОСІЙСЬКА ФЕДЕРАЦІЯ/RUS

Дата видачі/ *Date of issue*   Орган, що видав/ *Authority*
11 ГРУ/DEC 07   5901

Дата закінчення строку дії/ *Date of expiry*   Підпис пред'явника/ *Holder's signature*
11 ГРУ/DEC 17

P<UKRGUREVSKYI<<VOLODYMYR<<<<<<<<<<<<<<<<<<<
EA499802<6UKR5102242M1712117186821597 3<<<08



00092997 Ghanem_00000241



CASE NO.   CR 15-0704 (A)-SJO
           UNITED STATES OF AMERICA
VS.        GHANEM

PLAINTIFF'S EXHIBIT        723

DATE                              IDEN.

DATE                              EVID.

BY
              DEPUTY CLERK
AO 386

| From: | Стоян Николов <stoqnnikolov@yandex.com> |
|---|---|
| Sent: | Saturday, April 25, 2015 8:18 AM |
| To: | Rami Ghanem <ramithe@gmail.com> |
| Subject: | Re: Questions |
| Attach: | driver f1 draft 25042015.doc; tech f1 draft 25042015.doc; NDA.doc |

Ramy,

I tried to reduce to the minimum size the contracts, so crewman don`t get scared.

I refrained from using sophisticated language, besides in the NDA, where it serves as a threat.

I avoided the following miscellaneous questions and details, among others – no pets, not allowed stuff in the compounds - alcohol/drugs, personal guns.

Possible questions of smart-heads, which I intentionally skipped – criminal indemnity, taxation indemnity, holidays and expenses from/to home country, pararescue, actions in case of captivity – insurance for kidnap and ransom enough not mentioned.

Why serbian law - they made it illegal to be mercenary, so no one can actually go to the court there with this contract. If You have in mind other similar location, put it instead.

Waiting Your comments.

S

## AERIAL SERVICES CONTRACT

On this ... April 2015, between

1. ..........................., registered ..........................., with registered office at ......................., hereinafter referred to as "Mandator" as one of the parties,

and

2. **............................................**, born on ........, having passport .....................issued by ...................., with permanent address at ..........................., hereinafter referred to as "Contractor" as the other party,

      1.    The Mandator requires from the Contractor the services of piloting of Mirage F1 aircraft (the "Services"). The Services are direct force action against members, vehicles, equipment and positions of "Islamic state" and "Al-Qaeda" associates terrorist organisations and in support of the national security of Libya. The Services need to result in destruction/immobilisation of described targets.

      2.    The Contractor, acting as independent contractor, undertakes the provision of the Services under the conditions of this agreement.

      3.    The place of the Services is Libya, including its air-space and international air-space.

      4.    The contract is valid for ........ period. Starting date of the Services is the date of Contractor`s arrival at ..........

      5.    The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.

      While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.

      Missions will be planned and organised based on international military standards in military conflict conditions.

      Services shall be delivered on 24/7 basis.

      6.    The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.

      The Mandator undertakes to provide the Contractor for execution of the Services with operational and equipped aircraft.

      The Mandator undertakes to provide the Contractor:

   − with full hospitality of minimum 3 star accommodation on room and board basis;

   − life insurance;

   − health insurance;

      Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

1

7.    Remuneration of the Contractor for due delivery of his Services is agreed to be ........ monthly.

As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor`s obligations fulfillment and termination of this agreement.

Payment of the remuneration is monthly, between the 1st and the 5th of each month in cash against receipt or by wire transfer to the following bank account: ...............................

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.    The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.    Independent Contractor:    Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.   This contract is terminated:
   – upon its term expiration;
   – by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.

2

## TECHNICAL SERVICES CONTRACT

On this ... April 2015, between

1. ..........................., registered ..........................., with registered office at ......................., hereinafter referred to as "Mandator" as one of the parties,

and

2. **..........................................**, born on ........, having passport .....................issued by ...................., with permanent address at ............................, hereinafter referred to as "Contractor" as the other party,

      1.     The Mandator requires from the Contractor the services of Engine mechanic / Armament and Arming Technician / Aeronautical and Radio electrician / Body Technician for maintenance and repair of Mirage F1 aircraft (the "Services").

      2.     The Contractor, acting as independent contractor, undertakes the provision of the services under the conditions of this agreement.

      3.     The place of the Services is Libya.

      4.     The contract is valid for ........ period. Starting date of the Services is the date of Contractor's arrival at ..........

      5.     The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator's needs, instructions and supervision.

      While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.

      Services shall be delivered on 24/7 basis.

      6.     The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.

      The Mandator undertakes to position the Contractor for execution of the Services in operational and equipped maintenance warehouses in a zone free from hostile activities.

      The Mandator undertakes to provide the Contractor:

– with full hospitality of minimum 3 star accommodation on room and board basis;
– life insurance;
– health insurance;

      Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

      7.     Remuneration of the Contractor for due delivery of his Services is agreed to be ........ monthly.

1

As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor's obligations fulfillment and termination of this agreement.

Payment of the remuneration is monthly, between the 1st and the 5th of each month in cash against receipt or by wire transfer to the following bank account: .................................

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.     The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.     Independent Contractor:   Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.    This contract is terminated:
   – upon its term expiration;
   – by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.

2

Ghanem_00000241

## NON – DISCLOSURE AGREEMENT

On this … April 2015, between

1. …………………….., registered ………..……………, with registered office at …..….…………,
hereinafter referred to as "Mandator" as one of the parties,

and

2. **………………………………………**, born on …….., having passport …..………….issued by
………………, with permanent address at ………………………, hereinafter referred to as
"Contractor" as the other party,

### Preamble

**WHEREAS,** Mandator and Contractor (subsequently referred to individually as "Party" and
collectively as the "Parties") intend to work together on various projects and will for that purpose
exchange confidential documents and or information of any kind including, but not limited to:
everything related to the Mandator`s organisational structure and operations, including financial
and accounting information, descriptions of equipment, information regarding human resources,
available inventory, operational methods and technological solutions, as well as cases from the
Mandator`s practices (subsequently referred to as "information");

**WHEREAS,** for the purposes of this Agreement information means any and all information in
whatever form disclosed orally or in writing/electronically, together any reproductions of such
information in any form or medium or any part of such information, whether disclosed before or
after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

### Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this
information as entrusted business secrets with strictest confidentially, shall not disclose this
information to any third party and shall take all necessary precautions that no unauthorised
person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this
Confidentiality agreement as confidential with respect to third parties.

### Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited
period of time, to use it solely for the purpose of performing the obligations undertaken
according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or
part of it to any third party. For the purpose of this agreement "third party" includes any family
members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other
Party in their possession. Either Party is obliged to destroy immediately any information in its
possession when it is endangered of transfer to any third Party. For the purpose of this
agreement any and all disclosures and or transfers of information to any third party shall

3

constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:

   a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;

   b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement, the Contractor undertakes to immediately return to the Mandator any and all information.

### Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of ...............

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

### Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.       In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

### Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

### Art.6.  Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.

3

3

Ghanem_00000241

CASE NO. __CR 15-0704 (A)-SJO__

____UNITED STATES OF AMERICA____
VS. ____GHANEM____

PLAINTIFF'S EXHIBIT ____724____

DATE _____IDEN.

DATE_____EVID.

BY _____
          DEPUTY CLERK

AO 386

| | |
|---|---|
| **From:** | Gerton Business <gerton.businessllp@gmail.com> |
| **Sent:** | Tuesday, May 5, 2015 2:20 PM |
| **To:** | Rami Ghanem <ramithe@gmail.com> |
| **Subject:** | pilot contract |
| **Attach:** | Aerial Services contract 1.doc |

## AERIAL SERVICES CONTRACT

On this 05 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Reyes Cuenca Augusto Borys, born on 28.02.1977, having passport A 2940243 issued by ECU, with permanent address at Ecuador, Quito, Street Nazacota Puento N OE3-498, hereinafter referred to as "Contractor" as the other party,

    1.    The Mandator requires from the Contractor the services of piloting of Mirage F1 aircraft (the "Services"). The Services are direct force action against members, vehicles, equipment and positions of "Islamic state" and "Al-Qaeda" associates terrorist organisations and in support of the national security of Libya. The Services need to result in destruction/immobilization of described targets.

    2.    The Contractor, acting as independent contractor, undertakes the provision of the Services under the conditions of this agreement.

    3.    The place of the Services is Libya, including its air-space and international air-space.

    4.    The contract is valid for 90days period with posible extencion for another 90 days. Starting date of the Services is the date of Contractor`s arrival at 10.05.2015

    5.    The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.

While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.

Missions will be planned and organised based on international military standards in military conflict conditions.

Services shall be delivered daily as planed during the 24/7 basis.

    6.    The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.

The Mandator undertakes to provide the Contractor for execution of the Services with operational and equipped aircraft.

The Mandator undertakes to provide the Contractor:

– with full hospitality of minimum 3 star accommodation on room and board basis;
– life insurance;
– health insurance;

Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

    7.    Remuneration of the Contractor for due delivery of his Services is agreed to be 20 000 $ monthly.

1

       Payment of the remuneration is monthly, between the 25th and the 30th of each month in cash against receipt or by wire transfer to the following bank account: Banco GENERAL RUMINAHUI, acc. N 8101125700 , Beneficiary Milton Orlando Salazar Reyes

       Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

    8.    The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

    9.    Independent Contractor:  Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator. Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

    10.    This contract is terminated:
– upon its term expiration;
– by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

    11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.


For and on behalf of the Mandator.           Contractor:


Name: Banari Sergiu               Name: Reyes Cuenca Augusto Borys

Signature:…………………………….      Signature:…………………………

For and on behalf of the Mandator:      Contractor:

2

Ghanem_00000241

CASE NO. __CR 15-0704 (A)-SJO__

____UNITED STATES OF AMERICA____
VS. ____GHANEM____

PLAINTIFF'S EXHIBIT ____725____

DATE _____IDEN.

DATE_____EVID.

BY _____
                DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Alexei Alexei <office.hartford@gmail.com> |
| **Sent:** | Wednesday, June 10, 2015 12:28 PM |
| **To:** | Rami Ghanem <ramithe@gmail.com> |
| **Subject:** | Mi-24 NEW !!!!! |
| **Attach:** | Пилот оператор.jpg; img_003.jpg; Пилот.jpg; img194.jpg; img_003(1).jpg; img_004.jpg; img_001.jpg; img_001(1).jpg; img_004(1).jpg; img_002.jpg; img_002 (1).jpg; img187.jpg; img188.jpg; img_005.jpg; Бортачь.jpg; 2015526201941.jpg |







Паспорт є власністю України
This passport is the property of Ukraine

Іменем України Міністр закордонних справ України просить усіх, кого це може стосуватися, всіма можливими заходами полегшити поїздку пред'явника паспорта і надавати йому необхідну допомогу та захист.

In the name of Ukraine, the Minister of Foreign Affairs of Ukraine requests all those whom it may concern to facilitate in every possible way the travel of the bearer of this passport and to provide the bearer with all necessary assistance and protection.

**УКРАЇНА   UKRAINE**

ПАСПОРТ
PASSPORT

Тип/ Type **P**
Код держави/ Country code **UKR**
Номер паспорта/ Passport No. **EE307751**

Прізвище/ Surname
ЄРМОЛИЧЕВ/YERMOLYCHEV

Ім'я/ Given Names
ОЛЕГ/OLEH

Громадянство/ Nationality
УКРАЇНА/UKRAINE

Дата народження/ Date of birth
18 ЛЮТ/FEB 70

Персональний номер/ Personal No.
2561618177

Стать/ Sex **Ч/М**
Місце народження/ Place of birth
ЧЕРКАСЬКА ОБЛ./UKR

Дата видачі/ Date of issue
21 ЛИП/JUL 08

Орган, що видав/ Authority
6511

Дата закінчення строку дії/ Date of expiry
21 ЛИП/JUL 18

Підпис пред'явника/ Holder's signature

P<UKRYERMOLYCHEV<<OLEH<<<<<<<<<<<<<<<<<<<<<<<<
EE307751<9UKR7002184M1807217256161 8177<<<68

Ghanem-00072443

0007093G



Фотокартка вкмена/Фотокарточка вклеена

Підпис посадової особи/Подпись должностного лица

Підпис власника паспорта/Подпись владельца паспорта

4

5

00079037

Ghanem-00072443



ОСОБЛИВІ ВІДМІТКИ ОСОБЫЕ ОТМЕТКИ

Рокитнянським РС Управління
ДМС України в Київській області
Ракитянским РС Управления
ГМС Украины в Киевской области

27 лютого 2014 року

6

7



00079039                                                Ghanem-00072443

Ghanem_Sentencing_00000941





00079041

Ghanem-00072443

Ghanem_Sentencing_00000943



00079042

Ghanem-00072443



00079043

Ghanem-00072443

Ghanem-00072443

| Дата | К каким полётам допускается | На каком типе самолёти | В каких метеорологических условиях допускается | | | Должность, звание, подпись и фамилия лица, допустившего лётчика (штурмана) к полётам |
| | | | высота нижней границы обла-ков, м | полетная видимость, км | тип посадочной системы | |
|---|---|---|---|---|---|---|
| 14.05.94 | Самолёт на площадку гос. аэродрома | Ан-24 | 300 | 3 | РСП | Ком.82 авэ Миронов |
| 2.06.94 | К маршрутным полётам в районе аэродрома в РМУ | Ан-24 | 300 | 3 | РСП | Ком.82 авэ Миронов |
| 9.06.94 | К маршрутным полётам в районе аэродрома в РМУ по ПВП | Ан-24 | 300 | 5 | РСП | Ком.82 авэ Леонов |
| 16.08.95 | В тов. 82 эскадры. В б-не аэродрома | Ан-1 | 300 | 3 | | Зам. командира 83 Конис-нов |
| 16.08.95 | В сов. эскадр. к вылетам в РМУ ночью и полетам по ПВП | Ан-8 | 300 | 5 | | Зам.ком.82 авэ Конист-нов |

18

000079044



Ghanem-00072443

00079045

| Дата | К каким полетам допускается | На каком типе самолета | В каких метеорологических условиях допускается | | | Должность, звание, подпись и фамилия лица, допустившего летчика (штурмана) к полетам |
| --- | --- | --- | --- | --- | --- | --- |
| | | | высота нижней границы обла-ков, м | полетная видимость, км | тип посадочной системы | |
| 6.03.2003 | К ручному пилотон | Як-8 | 1000 | 4,3 | Единно | |
| 18.03.2003 | | Як-1 | 300 | 5 | Ил-80 | |
| 19.07.2004 | | Як-24 | 500 | 3 | Ил-80 | |
| 26.07.2004 | | Як-24 | 500 | | | |
| 23.02.2004 | | Як-24 | 500 | | | |
| 5.08.2007 | | Як-24 | | | | |

25



00079046

Ghanem-00072443

Ghanem_Sentencing_00000948

УКРАЇНА UKRAINE
ПАСПОРТ
PASSPORT
Тип/ Type
P
Код держави/ Country code
UKR
Номер паспорта/ Passport No.
ES399795
Прізвище/ Surname
ГОРДІЄНКО/GORDIIENKO
Ім'я/ Given Names
ВОЛОДИМИР/VOLODYMYR
Громадянство/ Nationality
УКРАЇНА/UKRAINE
Дата народження/ Date of birth
16 ЛЮТ/FEB 69
Персональний номер/ Personal No.
2524915251
Стать/ Sex
Ч/M
Місце народження/ Place of birth
КИЇВСЬКА ОБЛ./UKR
Дата видачі/ Date of issue
22 ЖОВ/OCT 14
Орган, що видав/ Authority
8090
Дата закінчення строку дії/ Date of expiry
22 ЖОВ/OCT 24
Підпис пред'явника/ Holder's signature
P<UKRGORDIIENKO<<VOLODYMYR<<<<<<<<<<<<<<<<<
ES399795<0UKR6902162M2410225252491525l<<<<00

00079047 Ghanem-00072443

Ghanem-00072443

0007904B



CASE NO.   CR 15-0704 (A)-SJO

_____UNITED STATES OF AMERICA_____
VS.   GHANEM

PLAINTIFF'S EXHIBIT   726

DATE _____IDEN.

DATE_____EVID.

BY _____
         DEPUTY CLERK
AO 386

| From: | Frederick Schroeder <schroederfred@hotmail.com> |
|---|---|
| Sent: | Saturday, June 13, 2015 11:18 AM |
| To: | ramithe@gmail.com; rami@caravaname.com |
| Subject: | Misurata |

Rami, i sent the invoices to Sergui for payment

The ticket from Doha to IST was 315
The ticket from IST to HKG was 635

Total is 950. Can you please ask him to pay this on Monday.

Rami it seems even when i first started here, you were always too busy to talk. So now since i am not going back i want to tell you a few things. If you care or not does not matter, but thinking back to our face to face talk, i should have said them then.

I don't know you, Sergui, Mohammed or anyone. I took the time to come here from China, i could have easily flown back business class for free on Qatar to HKG. Now i am going economy and who knows if i'll even get reimbursed because so far i have not gotten one single penny.

I took a leave from my employer of the last 5 years to come do this. I could have lost my job. I lost money since your not even paying me for the 10 days i was in Libya.

First of all, whether you think Sergui is a liar or not i can tell you 100 percent that the things said to BOTH Boris and I were not correct and or true.

1. I was told i would only be fighting ISIS. This is important, because technically speaking both BORIS AND I could be found violating the neutrality act, where as US citizen (boris still is one) can not attack a RECOGNIZED government.  If so, one is looking at 1 million dollar fine and 10 years in prison.

2. I do not even know if you are compliant with ITAR, where in by we are possibly providing defense services. Violation of this act is 10 years and 1 million dollar fine.

3. In our contract which i never even got it only said ISIS AND AL QUEDA. Thats obviously NOT TRUE, as they also wanted us to bomb the Tubroc side. So, there is another incorrect thing

4. I was told by Sergui "oh the food, its sooo good, omg i cant stop eating so much, they have plenty of vegetarian" Rami this is highly intense flying, not delivering the mail. If we are to fly everyday and do this type of flying we need to eat well. Candy and popcorn is not vegetarian food, its junk food.

5. I was told "yes, i send the guys to istanbul once per month for some free time" This again, was NOT true. Very much not true.

When i got there, all was ok. It was not until this general showed up that things went south. For some reason i always felt he did not like me. And its not like he has the greatest sense of humor.

That is total bullshit that i tried to get him crews. Total absolute bullshit. We were sitting there, him, Boris, me and Abdul and i simply asked out of pure curiosity do you need more L39 or Mig pilots. The general looked at me and said i need CH47, can you get me those? HE DID THE SAME THING WITH BORIS about getting the TWO TECHS!!!!!

Why the hell would i try to take business from you? I was always taught as a kid not to bite the hand that feeds you.

I did not take Sergui seriously after his msg to me about not paying me UNTIL BORIS SENT HIS FATHERS PASSPORT COPY. That is ridiculous because Boris gave it to him a month ago! it was AFTER i gave him the CORRECT SWIFTCODE that Sergui told me "IT WILL BE DONE ON MONDAY" Then i got that message on MONDAY that oh, it will be done sometime this week because of Boris father passport. HOW CAN I TAKE HIM SERIOUSLY AFTER ALL THE THINGS HE SAID WHICH ARE NOT IN FACT TRUE????????

So yes, i was not happy. Boris and i went to go speak to the general and Abdul Salam just happened to be there. I said Sergui is a liar. yes i did. WHY? Well, as you read now you know. I spokee i about the pay. And when Abdul told me and BORIS that he was told that HE WOULD HAVE 2 F1 PILOTS THAT CAN START TOMORROW BOMBING, i told him that is not true. THATS WHAT I SAID. Must i lie to people? I am not a good liar!

Then thats when Boris asked about his days off and the general said "IS IT IN YOUR CONTRACT?" From that point on, i knew that anything Sergui said to me MEANT NOTHING. What can u expect?

So i asked about my days off as told by Sergui. The general said no. I said can we compromise?

The next day, the general came in and i said i need these days as i dont want to fly single ship (meaning alone) This is NOT just do to air to air threats but its for mutual support!!! He told me to go back to IST, talk to you and if i can work things out to come back.

After i met with you, and you told me about the general saying these things about me, and also about Boris going to apologize to him which i was told was ALSO not true, i think that there are way too many Chiefs and not enough Indians running this show. That means it seems like everyone wants to be in command and make decisions, but no one wants to do the work.

I am a very honest person that has integrity. You told me that "I would not fit in Libya" Rami i have been to 94 countries and lived in 12. I have been in MUCH WORSE PLACES then Libya. Libya was disneyland compared to Afghanistan, Sudan, DRC, etc. I would have fit in perfect in libya IF YOU SAT DOWN WITH ME AND HAD A HEART TO HEART TALK BEFORE I LEFT.

I had no idea that discussing vegetarian food, or days off would get me sent home so quickly. Who would have thought this?

You have a well trained US NAVAL AVIATOR who has flown the MIrage (just last week) is honest, doesnt lie, cheat or steal and you sent me home because your guy Sergui (oh i wish i had this on a record somewhere to show you!) told me what to expect and when i got there it was different and i asked questions. Isn't that a bit overdramatic Rami?

You said a pilot only makes a mistake once. Well if that was the case, i wouldn't be here. Thats not true at all.

I am not desperate for this job, but i am very pissed off about the amount of time i spenty STUDYING this airplane, PLANNING to come here, and CHANGING my entire work schedule for the next 3 months! Its not right.

I am sure you will not reply to this. Maybe like i said it doesn't mean much to you. We are both fathers you and i, i would hope you being older than me would atleast take the time to consider this, all i have said and realize that its such a complete waste if i go back to china. Actually had i not said to the general about the days off, he would not have had such a knee jerk reaction about sending me. Plus i find it VERY strange that Sergui promised BOTH Boris and i days off, and yet the general said to Boris they would discuss it later, but with me he simply sent me home. If he didn't like me is one thing but he should have kept it professional.

Anyway, its up to you. If i leave tomorrow, i cannot come back. You said you have pilots from Gabon, well if you worked with pure africans you will know thats NOT a good choice for MANY reasons. Greece and Spain maybe, but i don't think they would stay and then you would lose time AGAIN. By the way, this job is posted on the internet and has been put on some pilot message boards already. just so you know Rami, the French pilots that you contacted, well they are not saying too many good things about this job and they did not even work there!

In any case, the decision rests with you. I told you man to man, and truthfully what happened. You don't have to believe me, but i have no reason to lie. And thats just not who i am.

And since i made this mistake i was even willing to take a lower salary, just to smooth the waters over. If you are keeping in your decision that i will not come back then please atleast do the right thing and reimburse me Monday for these tickets.

Thank you.

CASE NO.   CR 15-0704 (A)-SJO

UNITED STATES OF AMERICA
VS.   GHANEM

PLAINTIFF'S EXHIBIT      727

DATE _____ IDEN.

DATE _____ EVID.

BY _____
DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Alexei Alexei <office.hartford@gmail.com> |
| **Sent:** | Sunday, June 14, 2015 5:15 AM |
| **To:** | Rami Ghanem <ramithe@gmail.com> |
| **Subject:** | Mig-25 budget |
| **Attach:** | Mig-25 salary 3 moths.xlsx |

Ghanem-00072443

Sallary Costs for 3 months

| Functional | Qty | Salary price per month in USD | Total Salary price per 3 month in USD | |
|---|---|---|---|---|
| Captain | 1 | 19,000 | 57,000.00 | |
| Had engineer for Engine and Arms | 0 | | - | |
| Engine Technician | 0 | | - | |
| Arms Technician | 0 | | - | |
| | | Sub Total : | **57,000.00** | |

Additional costs for 3 months

| | | Add cost per month in USD | | |
|---|---|---|---|---|
| Per Dim (daily for each Function) | 1 | 30 | 2,700.00 | 30 days in each month |
| | | Sub Total : | **2,700.00** | |

| | | Grand Total: | **59,700.00** | |
|---|---|---|---|---|

One time costs (in aqddition)

| | | | | |
|---|---|---|---|---|
| Full Hospitality | 5 | - | - | |
| General Insurance and Health Insurance | 1 | 3,250.00 | 3,250.00 | |
| One night hotel in before departure | 10 | - | - | |
| Flight Tickets | | - | - | |
| | | Addition Total amount : | | |

CASE NO.   CR 15-0704 (A)-SJO

UNITED STATES OF AMERICA
VS.   GHANEM

PLAINTIFF'S EXHIBIT   728

DATE _____ IDEN.

DATE_____ EVID.

BY _____
DEPUTY CLERK
AO 386

| | |
|---|---|
| **From:** | Rami Ghanem <ramithe@gmail.com> |
| **Sent:** | Friday, June 19, 2015 8:03 AM |
| **To:** | gerton.businessllp@gmail.com |
| **Subject:** | Emailing: ~WRL1513.tmp, ~WRL3996.doc, NDA for F1 Services body stuctural.doc, NDA for F1 Services electronic.doc, NDA for F1 Services engine.doc, NDA for F1 Services maintenance.doc, NDA for F1 Services Pilot.doc, NDA for F1 Services weapons.doc, Technica |
| **Attach:** | ~WRL1513.tmp; ~WRL3996.doc; NDA for F1 Services body stuctural.doc; NDA for F1 Services electronic.doc; NDA for F1 Services engine.doc; NDA for F1 Services maintenance.doc; NDA for F1 Services Pilot.doc; NDA for F1 Services weapons.doc; Technical Services Contract Garces.doc; Technical Services Contract Gonzalez.doc; Technical Services Contract Ocana.doc; Technical Services Contract Tulcan.doc |

Your message is ready to be sent with the following file or link
attachments:

~WRL1513.tmp
~WRL3996.doc
NDA for F1 Services body stuctural.doc
NDA for F1 Services electronic.doc
NDA for F1 Services engine.doc
NDA for F1 Services maintenance.doc
NDA for F1 Services Pilot.doc
NDA for F1 Services weapons.doc
Technical Services Contract Garces.doc
Technical Services Contract Gonzalez.doc
Technical Services Contract Ocana.doc
Technical Services Contract Tulcan.doc

Note: To protect against computer viruses, e-mail programs may prevent
sending or receiving certain types of file attachments. Check your e-mail
security settings to determine how attachments are handled.



Ghanem-00072443

Ghanem_Sentencing_00000959

## TECHNICAL SERVICES CONTRACT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,
and
2. Garces Onate Manuel Mesias, born on 10.02.1957, having passport A 5189834 issued by ECU, with permanent address at Ecuador, Milagro, Ciudadela Los Helechos MZ 4, Villa 5 hereinafter referred to as "Contractor" as the other party,

1.      The Mandator requires from the Contractor the services of Mechanical Technician, Electrical Technician, Radio electrician Technician Cabling   (Grid connection) Technician for installation, maintenance and repair of new renewable (wind) power station (the "Services").

2.      The Contractor, acting as independent contractor, undertakes the provision of the services under the conditions of this agreement.

3.      The place of the Services is Middle East & North Africa.

4.      The contract is valid for 90 days period with posible extencion for another 90 days Starting date of the Services is the date of Contractor`s arrival at 10.05.2015

5.      The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.
        While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.
        Services shall be delivered on 24/7 basis.

6.      The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.
        The Mandator undertakes to position the Contractor for execution of the Services in operational and equipped maintenance warehouses in a zone free from hostile activities.
        The Mandator undertakes to provide the Contractor:
        – with full hospitality of minimum 3 star accommodation on room and board basis;
        – life insurance;
        – health insurance;
        Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

7.      Remuneration of the Contractor for due delivery of his Services is agreed to be 10 000 $ monthly.
        As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor`s obligations fulfillment and termination of this agreement.
        Payment of the remuneration is monthly, between the 1st and the 5th of each month

1

in cash against receipt or by wire transfer to the following bank account: Banco RUMINAHUI, acc.N 8018625204 code CORRIENTE

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.    The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.    Independent Contractor:   Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.    This contract is terminated:
   – upon its term expiration;
   – by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.


For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                                   Name: Tulcan Pozo Jose
                                                      Miguel

Signature:……………………………                          Signature:……………………………


For and on behalf of the Mandator:          Contractor:

2

Ghanem-00072443

TECHNICAL SERVICES CONTRACT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,
and

2. Garces Onate Manuel Mesias, born on 10.02.1957, having passport A 5189834 issued by ECU, with permanent address at Ecuador, Milagro, Ciudadela Los Helechos MZ 4, Villa 5 hereinafter referred to as "Contractor" as the other party,

1.    The Mandator requires from the Contractor the services of Mechanical Technician, Electrical Technician, Radio electrician Technician Cabling    (Grid connection) Technician for installation, maintenance and repair of new renewable (wind) power station (the "Services").

2.    The Contractor, acting as independent contractor, undertakes the provision of the services under the conditions of this agreement.

3.    The place of the Services is Middle East & North Africa.

4.    The contract is valid for 90 days period with posible extencion for another 90 days Starting date of the Services is the date of Contractor`s arrival at 10.05.2015

5.    The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.
While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.
Services shall be delivered on 24/7 basis.

6.    The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.
The Mandator undertakes to position the Contractor for execution of the Services in operational and equipped maintenance warehouses in a zone free from hostile activities.
The Mandator undertakes to provide the Contractor:
−  with full hospitality of minimum 3 star accommodation on room and board basis;
−  life insurance;
−  health insurance;
Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

7.    Remuneration of the Contractor for due delivery of his Services is agreed to be 10 000 $ monthly.
As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor`s obligations fulfillment and termination of this agreement.
Payment of the remuneration is monthly, between the 1st and the 5th of each month

1

in cash against receipt or by wire transfer to the following bank account: Banco RUMINAHUI, acc.N 8018625204 code CORRIENTE

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.    The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.    Independent Contractor:   Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.    This contract is terminated:
   −   upon its term expiration;
   −   by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.

For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                           Name: Garces Onate Manuel Mesias

Signature:………………………….…            Signature:……………………….….


For and on behalf of the Mandator:          Contractor:

2

Ghanem-00072443

## NON – DISCLOSURE AGREEMENT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Ocana MontesdeocaWuilson Tarquino, born on 21.11.1965, having passport A 5517313 issued by ECU, with permanent address at Ecuador,Latacunga str. Benjamin Teran, hereinafter referred to as "Contractor" as the other party,

### Preamble

WHEREAS, Mandator and Contractor (subsequently referred to individually as "Party" and collectively as the "Parties") intend to work together on various projects and will for that purpose exchange confidential documents and or information of any kind including, but not limited to: everything related to the Mandator`s organisational structure and operations, including financial and accounting information, descriptions of equipment, information regarding human resources, available inventory, operational methods and technological solutions, as well as cases from the Mandator`s practices (subsequently referred to as "information");

WHEREAS, for the purposes of this Agreement information means any and all information in whatever form disclosed orally or in writing/electronically, together any reproductions of such information in any form or medium or any part of such information, whether disclosed before or after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this information as entrusted business secrets with strictest confidentially, shall not disclose this information to any third party and shall take all necessary precautions that no unauthorised person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this Confidentiality agreement as confidential with respect to third parties.

Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited period of time, to use it solely for the purpose of performing the obligations undertaken according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or part of it to any third party. For the purpose of this agreement "third party" includes any family members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other Party in their possession. Either Party is obliged to destroy immediately any information in its possession when it is endangered of transfer to any third Party. For the purpose of this agreement any and all disclosures and or transfers of information to any third party shall constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:
   a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;
   b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement,

1

the Contractor undertakes to immediately return to the Mandator any and all information.

Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of 30 000 $

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.      In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

Art.6. Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.


For and on behalf of the Mandator.                    Contractor:


Name:Banari Sergiu                                    Name: Ocana MontesdeocaWuilson
                                                      Tarquino


Signature:……………………….….               Signature:…………………………


For and on behalf of the Mandator:          Contractor:


2

## NON – DISCLOSURE AGREEMENT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Tulcan Pozo Jose Miguel, born on 13.10.1961, having passport A 5501106 issued by ECU, with permanent address at Ecuador, Guayaquil str. Sauces 5, MZ 240, Villa 6 hereinafter referred to as "Contractor" as the other party,

### Preamble

WHEREAS, Mandator and Contractor (subsequently referred to individually as "Party" and collectively as the "Parties") intend to work together on various projects and will for that purpose exchange confidential documents and or information of any kind including, but not limited to: everything related to the Mandator`s organisational structure and operations, including financial and accounting information, descriptions of equipment, information regarding human resources, available inventory, operational methods and technological solutions, as well as cases from the Mandator`s practices (subsequently referred to as "information");

WHEREAS, for the purposes of this Agreement information means any and all information in whatever form disclosed orally or in writing/electronically, together any reproductions of such information in any form or medium or any part of such information, whether disclosed before or after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this information as entrusted business secrets with strictest confidentially, shall not disclose this information to any third party and shall take all necessary precautions that no unauthorised person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this Confidentiality agreement as confidential with respect to third parties.

Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited period of time, to use it solely for the purpose of performing the obligations undertaken according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or part of it to any third party. For the purpose of this agreement "third party" includes any family members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other Party in their possession. Either Party is obliged to destroy immediately any information in its possession when it is endangered of transfer to any third Party. For the purpose of this agreement any and all disclosures and or transfers of information to any third party shall constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:

  a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;

  b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement,

1

the Contractor undertakes to immediately return to the Mandator any and all information.

Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of 30 000 $

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.      In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

Art.6. Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.


For and on behalf of the Mandator.                    Contractor:


Name:Banari Sergiu                                    Name: Tulcan Pozo Jose
                                                      Miguel


Signature:…………………………..                              Signature:…………….…….…….….


For and on behalf of the Mandator:          Contractor:


2

Ghanem-00072443

NON – DISCLOSURE AGREEMENT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Garces Onate Manuel Mesias, born on 10.02.1957, having passport A 5189834 issued by ECU, with permanent address at Ecuador, Milagro, Ciudadela Los Helechos MZ 4, Villa 5 hereinafter referred to as "Contractor" as the other party,

Preamble

WHEREAS, Mandator and Contractor (subsequently referred to individually as "Party" and collectively as the "Parties") intend to work together on various projects and will for that purpose exchange confidential documents and or information of any kind including, but not limited to: everything related to the Mandator`s organisational structure and operations, including financial and accounting information, descriptions of equipment, information regarding human resources, available inventory, operational methods and technological solutions, as well as cases from the Mandator`s practices (subsequently referred to as "information");

WHEREAS, for the purposes of this Agreement information means any and all information in whatever form disclosed orally or in writing/electronically, together any reproductions of such information in any form or medium or any part of such information, whether disclosed before or after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this information as entrusted business secrets with strictest confidentially, shall not disclose this information to any third party and shall take all necessary precautions that no unauthorised person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this Confidentiality agreement as confidential with respect to third parties.

Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited period of time, to use it solely for the purpose of performing the obligations undertaken according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or part of it to any third party. For the purpose of this agreement "third party" includes any family members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other Party in their possession. Either Party is obliged to destroy immediately any information in its possession when it is endangered of transfer to any third Party. For the purpose of this agreement any and all disclosures and or transfers of information to any third party shall constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:

    a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;

    b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement,

1

the Contractor undertakes to immediately return to the Mandator any and all information.

Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of 30 000 $

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.      In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

Art.6. Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.

For and on behalf of the Mandator.                    Contractor:


Name:Banari Sergiu                                    Name: Tulcan Pozo Jose
                                                      Miguel

Signature:…………………………….                    Signature:…………………………


For and on behalf of the Mandator:              Contractor:

2

Ghanem-00072443

## NON – DISCLOSURE AGREEMENT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Salazar Reyes Milton Orlando, born on 04.06.1963, having passport A 5517073 issued by ECU, with permanent address at Ecuador, Guayaquil, Ciudadela Centenario hereinafter referred to as "Contractor" as the other party,

### Preamble

WHEREAS, Mandator and Contractor (subsequently referred to individually as "Party" and collectively as the "Parties") intend to work together on various projects and will for that purpose exchange confidential documents and or information of any kind including, but not limited to: everything related to the Mandator`s organisational structure and operations, including financial and accounting information, descriptions of equipment, information regarding human resources, available inventory, operational methods and technological solutions, as well as cases from the Mandator`s practices (subsequently referred to as "information");

WHEREAS, for the purposes of this Agreement information means any and all information in whatever form disclosed orally or in writing/electronically, together any reproductions of such information in any form or medium or any part of such information, whether disclosed before or after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this information as entrusted business secrets with strictest confidentially, shall not disclose this information to any third party and shall take all necessary precautions that no unauthorised person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this Confidentiality agreement as confidential with respect to third parties.

Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited period of time, to use it solely for the purpose of performing the obligations undertaken according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or part of it to any third party. For the purpose of this agreement "third party" includes any family members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other Party in their possession. Either Party is obliged to destroy immediately any information in its possession when it is endangered of transfer to any third Party. For the purpose of this agreement any and all disclosures and or transfers of information to any third party shall constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:

    a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;

    b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement,

1

Ghanem-00072443

Ghanem_Sentencing_00000970

the Contractor undertakes to immediately return to the Mandator any and all information.

Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of 30 000 $

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.      In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

Art.6. Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.


For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                                   Name: Salazar Reyes Milton
                                                      Orlando


Signature:…………………………….                          Signature:…………………………….


For and on behalf of the Mandator:                   Contractor:

2

Ghanem-00072443

<center>NON – DISCLOSURE AGREEMENT</center>

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Reyes Cuenca Augusto Borys, born on 28.02.1977, having passport A 2940243 issued by ECU, with permanent address at Ecuador, Quito, Street Nazacota Puento N OE3-498  hereinafter referred to as "Contractor" as the other party,

<center>Preamble</center>

WHEREAS, Mandator and Contractor (subsequently referred to individually as "Party" and collectively as the "Parties") intend to work together on various projects and will for that purpose exchange confidential documents and or information of any kind including, but not limited to: everything related to the Mandator`s organisational structure and operations, including financial and accounting information, descriptions of equipment, information regarding human resources, available inventory, operational methods and technological solutions, as well as cases from the Mandator`s practices (subsequently referred to as "information");

WHEREAS, for the purposes of this Agreement information means any and all information in whatever form disclosed orally or in writing/electronically, together any reproductions of such information in any form or medium or any part of such information, whether disclosed before or after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this information as entrusted business secrets with strictest confidentially, shall not disclose this information to any third party and shall take all necessary precautions that no unauthorised person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this Confidentiality agreement as confidential with respect to third parties.

Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited period of time, to use it solely for the purpose of performing the obligations undertaken according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or part of it to any third party. For the purpose of this agreement "third party" includes any family members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other Party in their possession. Either Party is obliged to destroy immediately any information in its possession when it is endangered of transfer to any third Party. For the purpose of this agreement any and all disclosures and or transfers of information to any third party shall constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:
   a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;
   b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement,

1

the Contractor undertakes to immediately return to the Mandator any and all information.

Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of 60 000 $

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.      In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

Art.6. Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.


For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                                   Name: Reyes Cuenca Augusto
                                                      Borys


Signature:…………………………..                           Signature:…………………………


For and on behalf of the Mandator:           Contractor:


2

Ghanem-00072443

Ghanem_Sentencing_00000973

NON – DISCLOSURE AGREEMENT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,

and

2. Gonzalez Zambrano Joe William, born on 28.11.1964, having passport A 5516960 issued by ECU, with permanent address at Ecuador, Milagrohereinafter referred to as "Contractor" as the other party,

Preamble

WHEREAS, Mandator and Contractor (subsequently referred to individually as "Party" and collectively as the "Parties") intend to work together on various projects and will for that purpose exchange confidential documents and or information of any kind including, but not limited to: everything related to the Mandator`s organisational structure and operations, including financial and accounting information, descriptions of equipment, information regarding human resources, available inventory, operational methods and technological solutions, as well as cases from the Mandator`s practices (subsequently referred to as "information");

WHEREAS, for the purposes of this Agreement information means any and all information in whatever form disclosed orally or in writing/electronically, together any reproductions of such information in any form or medium or any part of such information, whether disclosed before or after the date of this Agreement.

The Parties NOW THEREFORE agree as follows:

Art.1. Subject of the Agreement

1.The Parties agree that either Party receiving information from other Party shall treat this information as entrusted business secrets with strictest confidentially, shall not disclose this information to any third party and shall take all necessary precautions that no unauthorised person receives knowledge thereof.

2. At the same time, each Party hereto shall treat the existence and content of this Confidentiality agreement as confidential with respect to third parties.

Art.2. Obligations of the parties

1. Both Parties undertake to treat the other Party's information as confidential for an unlimited period of time, to use it solely for the purpose of performing the obligations undertaken according to any oral or written agreements between the Parties.

2. Under any circumstances either of the Parties is not allowed to disclose any information or part of it to any third party. For the purpose of this agreement "third party" includes any family members and any other contractors of the same Mandator.

3. Both Parties are obliged to pay all necessary efforts to protect the information of the other Party in their possession. Either Party is obliged to destroy immediately any information in its possession when it is endangered of transfer to any third Party. For the purpose of this agreement any and all disclosures and or transfers of information to any third party shall constitute a wilful misconduct in breach of this agreement.

4. The obligation to maintain confidentiality under this agreement shall not apply to:
   a) Information that is generally available to the public other than as a breach of this Confidentiality agreement;
   b) Information that was already lawfully in the possession of either of the Parties hereto prior to the effective date of this Confidentiality agreement without having been obtained from the other Party or from an associate of the other Party.

5. Evidence that one of the foregoing exceptions applies shall be available before use or disclosure of the information.

6. Prior to the termination of all existing agreements between the Parties, besides this Agreement,

1

the Contractor undertakes to immediately return to the Mandator any and all information.

Art.3. Sanctions

1. Should any breach of this agreement occurs, the defaulting Party is obliged to compensate the other Party with the payment of a lump sum to the amount of 30 000 $

2. The above-stated payment does not bar the other Party to seek further compensation to the amount of the losses suffered and missed profits.

3. The payments under this article do not exhaust the sanctions against the defaulting Party. The other Party is entitled to procure criminal proceedings according to the applicable law.

Art.4. Settlement of Disputes

1. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Libiyan Law.

2.      In the event that a dispute arises in connection with the interpretation and implementation of this Agreement, the Parties should in good faith negotiate and resolve this dispute, otherwise it shall be finally settled by the proper Tripoli Court.

Art.5. Entire agreement

This agreement constitutes the entire understanding between the Mandator and the Contractor and cannot be altered and modified except by an agreement in writing signed by both parties.

Art.6. Severability

1. Should one or more of the provision of this Agreement be held unenforceable or invalid for any reason, the remaining provisions shall remain unaffected.

2. Taking into account the economic purpose of this contract and utilising the legal methods of the interpretation, conversion and amendment, the parties undertake to replace an invalid or unenforceable provisions that corresponds as closely as possible to the invalid or unenforceable provision and gives effect as far as possible to intentions of the Parties. The valid provision will take effect in the future.

This Agreement has been signed in two uniform copies, for each of the Parties.

For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                                   Name: Gonzalez Zambrano Joe
                                                      William


Signature:…………………………..                         Signature:………………………….


For and on behalf of the Mandator:             Contractor:

2

Ghanem-00072443

TECHNICAL SERVICES CONTRACT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,
and
2. Garces Onate Manuel Mesias, born on 10.02.1957, having passport A 5189834 issued by ECU, with permanent address at Ecuador, Milagro, Ciudadela Los Helechos MZ 4, Villa 5 hereinafter referred to as "Contractor" as the other party,

1.    The Mandator requires from the Contractor the services of Mechanical Technician, Electrical Technician, Radio electrician Technician Cabling    (Grid connection) Technician for installation, maintenance and repair of new renewable (wind) power station (the "Services").

2.    The Contractor, acting as independent contractor, undertakes the provision of the services under the conditions of this agreement.

3.    The place of the Services is Middle East & North Africa.

4.    The contract is valid for 90 days period with posible extencion for another 90 days Starting date of the Services is the date of Contractor`s arrival at 10.05.2015

5.    The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.
While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.
Services shall be delivered on 24/7 basis.

6.    The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.
The Mandator undertakes to position the Contractor for execution of the Services in operational and equipped maintenance warehouses in a zone free from hostile activities.
The Mandator undertakes to provide the Contractor:
−  with full hospitality of minimum 3 star accommodation on room and board basis;
−  life insurance;
−  health insurance;
Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

7.    Remuneration of the Contractor for due delivery of his Services is agreed to be 10 000 $ monthly.
As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor`s obligations fulfillment and termination of this agreement.
Payment of the remuneration is monthly, between the 1st and the 5th of each month

1

in cash against receipt or by wire transfer to the following bank account: Banco RUMINAHUI, acc.N 8018625204 code CORRIENTE

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.     The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.     Independent Contractor:   Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.    This contract is terminated:
   −   upon its term expiration;
   −   by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.

For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                              Name: Garces Onate Manuel Mesias

Signature:…………………………….            Signature:…………………………….


For and on behalf of the Mandator:           Contractor:

2

Ghanem-00072443

TECHNICAL SERVICES CONTRACT

On this 04 May 2015, between

1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,
and
2. Gonzalez Zambrano Joe William, born on 28.11.1964, having passport A 5516960 issued by ECU, with permanent address at Ecuador, Milagro, hereinafter referred to as "Contractor" as the other party,

1.      The Mandator requires from the Contractor the services of Mechanical Technician, Electrical Technician, Radio electrician Technician Cabling    (Grid connection) Technician for installation, maintenance and repair of new renewable (wind) power station (the "Services").

2.      The Contractor, acting as independent contractor, undertakes the provision of the services under the conditions of this agreement.

3.      The place of the Services is Middle East & North Africa.

4.      The contract is valid for 90 days period with posible extencion for another 90 days Starting date of the Services is the date of Contractor`s arrival at 10.05.2015

5.      The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.
        While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.
        Services shall be delivered on 24/7 basis.

6.      The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.
        The Mandator undertakes to position the Contractor for execution of the Services in operational and equipped maintenance warehouses in a zone free from hostile activities.
        The Mandator undertakes to provide the Contractor:
        −   with full hospitality of minimum 3 star accommodation on room and board basis;
        −   life insurance;
        −   health insurance;
        Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

7.      Remuneration of the Contractor for due delivery of his Services is agreed to be 10 000 $ monthly.
        As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor`s obligations fulfillment and termination of this agreement.
        Payment of the remuneration is monthly, between the 1st and the 5th of each month

1

in cash against receipt or by wire transfer to the following bank account: Banco RUMINAHUI, acc.N 8101117600 code AHORROS

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.    The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.    Independent Contractor:    Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.    This contract is terminated:
    −  upon its term expiration;
    −  by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.

For and on behalf of the Mandator.                Contractor:


Name: Banari Sergiu                          Name: Gonzalez Zambrano Joe
                                             William

Signature:…………………………….          Signature:……………………………


For and on behalf of the Mandator:            Contractor:

2

Ghanem-00072443

TECHNICAL SERVICES CONTRACT

On this 04 May 2015, between
1. Gateway to Mena for logistic services, registered 200138167, with registered office at 43 Abdul Hamid Sharaf St. P.O. Box 950601 Amman 11195 Jordan, hereinafter referred to as "Mandator" as one of the parties,
and
2. Ocana Montesdeoca Wuilson Tarquino, born on 21.11.1965, having passport A 5517313 issued by ECU, with permanent address at Ecuador,Latacunga str. Benjamin Teran, hereinafter referred to as "Contractor" as the other party,

1.    The Mandator requires from the Contractor the services of Mechanical Technician, Electrical Technician, Radio electrician Technician Cabling    (Grid connection) Technician for installation, maintenance and repair of new renewable (wind) power station (the "Services").

2.    The Contractor, acting as independent contractor, undertakes the provision of the services under the conditions of this agreement.

3.    The place of the Services is Middle East & North Africa.

4.    The contract is valid for 90 days period with posible extencion for another 90 days Starting date of the Services is the date of Contractor`s arrival at 10.05.2015

5.    The Contractor undertakes to execute any and all of his obligations under this agreement with due diligence, at the highest professional level, with skill and to the best of his ability, while maintaining a high professional standard, all subject and in accordance with the Mandator`s needs, instructions and supervision.
While delivering the Services, the Contractor shall be fully under the operational control and shall strictly follow the instructions of an appointed Supervisor of the Mandator who will be solely responsible for their supervision, daily direction and control.
Services shall be delivered on 24/7 basis.

6.    The Mandator undertakes to provide the Contractor with all the materials, consumables, etc., concerning the provision of the Services, as well as any information, required by the Contractor, necessary for the proper performance of his duties.
The Mandator undertakes to position the Contractor for execution of the Services in operational and equipped maintenance warehouses in a zone free from hostile activities.
The Mandator undertakes to provide the Contractor:
−  with full hospitality of minimum 3 star accommodation on room and board basis;
−  life insurance;
−  health insurance;
Insurances could be dealt by the Contractor and expenses reimbursed by the Mandator, based on preliminary approval of the insurance policy and cost.

7.    Remuneration of the Contractor for due delivery of his Services is agreed to be 10 000 $ monthly.
As a guarantee for the due performance of this agreement a 15% deposit is to be withhold from each payment by the Mandator and shall be payed upon the Contractor`s obligations fulfillment and termination of this agreement.
Payment of the remuneration is monthly, between the 1st and the 5th of each month

1

in cash against receipt or by wire transfer to the following bank account: Banco Ruminahui, acc.N 8049641400 code AHORROS

Each party shall be responsible for its own taxes, social security payments and/or banking charges, etc., in relation to this agreement.

8.     The Contractor fully indemnifies the Mandator for any and all damages to health, life, profits, equipment and personal belongings, given the life and health insurance policies are validly issued and paid for. This indemnification stretches to the heirs of the Contractor. In case the heirs claim against the Mandator any payments for compensation, damage etc., the Mandator is entitled to a compensation lump sum against the Contractor's property/inheritance to the amount of the claims.

9.     Independent Contractor:     Contractor acknowledges that he shall perform his obligations hereunder as an independent contractor and not as an employee nor agent of the Mandator.  Contractor further acknowledge that he is not on Mandator's payroll and social security or tax withholding rolls.

10.     This contract is terminated:
   –   upon its term expiration;
   –   by unilateral notification by the Mandator in case the Contractor fails to provide the required quality of Services – in such case the performance deposit of the Contractor serves as a compensation to the Mandator.

11. All disputes that may arise in connection with the performance of the present contract shall be settled in the way of agreement. If this proves impossible all disputes and disagreements shall be governed by and construed in accordance with Serbian Law by the courts in Belgrade.

This Agreement has been signed in two uniform copies, for each of the Parties.

For and on behalf of the Mandator.                    Contractor:


Name: Banari Sergiu                    Name: Ocana Montesdeoca Wuilson Tarquino


Signature:……………………………                    Signature:………………………………


For and on behalf of the Mandator:          Contractor:

2

Ghanem-00072443